# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **DIETGOAL INNOVATIONS LLC,** | **CIVIL ACTION NO. 2:12-CV-00761-JRG-RSP** |
|    **Plaintiff,** | **(Consolidated)** |
| **v.** | **Jury Trial Demanded** |
| **KELLAN RESTAURANT MANAGEMENT CORP. D/B/A 54TH STREET GRILL, et al.** | **LEAD CASE** |
|    **Defendants.** | |

## DEFENDANTS' JOINT RESPONSIVE CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.    DISCUSSION ................................................................................................................1

    A.    Disputed Claim Terms ...............................................................................1

        1.    "Computerized meal planning" [Claims 1, 2] /
            "Computerized planning" [Claim 13] ......................................................1

        2.    "Customized eating goal" (Proposed by Plaintiff)
            [Claims 1, 2, 3, 13, 30] / "Customized eating goals"
            (Proposed by Defendants) [Claims 2, 3, 13, 30] ......................................6

        3.    "User Interface" [Claims 1, 2, 12, 13] ..................................................12

        4.    "Food objects" [Claims 1, 2, 12, 13] ....................................................14

        5.    "Picture Menus" [Claims 1, 3, 6, 13] ....................................................15

        6.    "Picture Menus, which displays on the User Interface
            meals from the Database that a user can select from to
            meet customized eating goal[s]" [Claim 1] .............................................17

        7.    "Meal" / "Meals" [Claims 1-3, 6, 12-13] .................................................19

        8.    "Meal Builder" [Claims 2, 3, 6, 13, 41] ................................................20

        9.    "Meal Builder, which displays on the User Interface
            meals from the Database, and wherein a user can change
            content of said meals and view the resulting meals'
            impact on customized eating goals" [Claim 2] ......................................23

        10.    "Meal Builder, which displays on the User Interface the
            food objects from the meals from the Database,
            corresponding to the Picture Menus, where the user can
            change and view the meals' impact on customized
            eating goals" [Claims 13, 14] ................................................................25

        11.    "View the resulting meals' impact on customized eating
            goals" [Claims 2, 3] / "View the meals' impact on
            customized eating goals" [Claims 13, 14] .............................................26

        12.    "Which display on a User Interface meals comprised
            from food objects from the Database" [Claim 13] /
            "Which displays on the User Interface meals from the
            Database" [Claims 1-3] ........................................................................27

        13.    "Value" [Claims 24, 49] ........................................................................27

i

II.     CONCLUSION ...........................................................................................................30

ii

# TABLE OF AUTHORITIES

**Federal Cases**

*Abbott Labs. v. Sandoz,*
    566 F.3d 1282 (Fed. Cir. 2009) ...................................................................................10

*Accent Packaging, Inc. v. Leggett & Platt, Inc.,*
    707 F.3d 1318 (Fed. Cir. 2013) ..................................................................................13

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.,*
    132 F.3d 701 (Fed. Cir. 1997) ....................................................................................23

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.,*
    262 F.3d 1258 (Fed. Cir. 2001) ..................................................................................11

*Catalina Marketing Int'l, Inc., v. Coolsavings.com, Inc.,*
    289 F.3d 801 (Fed. Cir. 2002) ......................................................................................2

*Collins v. Nissan N. Am., Inc.,*
    2013 WL 448923 (E.D. Tex. Feb. 6, 2013) ...............................................................15

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.,*
    257 F.3d 1364 (Fed. Cir. 2001) ..................................................................................14

*Ekchian v. Home Depot, Inc.,*
    104 F.3d 1299 (Fed. Cir. 1997) ..............................................................................9, 28

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,*
    214 F.3d 1302 (Fed. Cir. 2000) ....................................................................................7

*Entegris, Inc. v. Pall Corp.,*
    2008 WL 886034 (D. Mass. Mar. 31, 2008) ...............................................................5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (2002) ...................................................................................................30

*Halliburton Energy Servs., Inc. v. M-I LLC,*
    514 F.3d 1244 (Fed. Cir. 2008) ..................................................................................10

*Helmsderfer v. Bobrick Washroom Equip., Inc.,*
    527 F.3d 1379 (Fed. Cir. 2008) ..................................................................................12

*Hoffer v. Microsoft Corp.,*
    405 F.3d 1326 (Fed. Cir. 2005) ....................................................................................6

*In re Cruciferous Sprout Litig.,*
    301 F.3d 1343 (Fed. Cir. 2002) ....................................................................................3

iii

*In re Paulsen,*
  30 F.3d 1475 (Fed. Cir. 1994) ..................................................................4

*In re Venner,*
  262 F.2d 92 (C.C.P.A. 1958) ....................................................................7

*Interactive Gift Express, Inc. v. CompuServe Inc.,*
  256 F.3d 1323 (Fed. Cir. 2001) ..............................................................21

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
  327 F.3d 1364 (Fed. Cir. 2003) ................................................................3

*I.T.S. Rubber Co. v. Essex Rubber Co.,*
  272 U.S. 429 (1926) ..................................................................................6

*JVW Enters., Inc. v. Interact Accessories, Inc.,*
  424 F.3d 1324 (Fed. Cir. 2005) ..............................................................18

*Lemelson v. General Mills, Inc.,*
  968 F.2d 1202 (Fed. Cir. 1992) ............................................................5, 6

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
  382 F.3d 1354 (Fed. Cir. 2004) ..........................................................18, 24

*Medtronic, Inc. v. Guidant Corp.,*
  465 F.3d 1360 (Fed. Cir. 2006) ................................................................9

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.,*
  415 F.3d 1335 (Fed. Cir. 2005) ...........................................................9, 22

*On Demand Mach. Corp. v. Ingram Indus., Inc.,*
  442 F.3d 1331 (Fed. Cir. 2006) ..............................................................30

*Orion IP, LLC v. Staples, Inc.,*
  406 F. Supp. 2d 717 (E.D. Tex. 2005) ....................................................19

*Pass & Seymour, Inc. v. ITC,*
  617 F.3d 1319 (Fed. Cir. 2010) ..............................................................19

*Pause Tech. LLC v. TiVo Inc.,*
  419 F.3d 1326 (Fed. Cir. 2005) ..........................................................21, 22

*Personalized Media Commc'ns, LLC v. ITC,*
  161 F.3d 696 (Fed. Cir. 1998) ............................................................18, 24

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ..............................................................30

iv

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ............................................................2

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002) ............................................................4

*Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) .......................................................9, 28

*Takeda Pharm. Co. v. Handa Pharms., LLC*,
    2012 WL 1243109 (N.D. Cal. Apr. 11, 2012) ....................................14

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ............................................................3

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) .........................................................................17, 24

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) ..........................................................18

*Yodlee, Inc. v. CashEdge, Inc.*,
    2006 WL 1883342 (N.D. Cal. July 7, 2006) ..................................18, 24

*Zenon Envtl., Inc. v. U.S. Filter Corp.*,
    506 F.3d 1370 (Fed. Cir. 2007) ........................................................5, 6

*NY 243518066v4*

DietGoal's claim construction positions reflect a systematic attempt to stretch the claim scope far beyond what the claim language and the intrinsic record permit.  In doing so, DietGoal ignores the fundamental nature of the alleged invention claimed in U.S. Patent No. 6,585,516 (the "'516 patent").   The claimed system allows a user to input her dieting goals into the computer and subsequently review food items and meals from databases through menus, select certain food objects, and plan a meal.  The computer compares the planned meal to the user's goals, so the user knows if she is eating in line with her desired goals.  If the user is not meeting her dieting goals, the computer displays a warning during the meal selection process.  DietGoal ignores these requirements entirely, instead arguing that the system only needs to display images of food and nutrition information, leaving it to the user to decide, *in her head*, if the planned meal is in line with her desired goals.  This is not what the patent discloses and claims.  To the contrary, the user's intended dietary goals must be stored in the computer, so that the computer can compare the planned meals to those goals and then display the result of the comparison to the user.  Displaying the results of the comparison between these two pieces of computerized data – the dieting goals and the meals information – is the very essence of the claimed invention, and a construction that omits this requirement is improper.

# I.     DISCUSSION[1]

## A.     Disputed Claim Terms

1.     "Computerized meal planning" [Claims 1, 2] / "Computerized planning" [Claim 13]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| "Planning a meal with a computer system without utilizing a network connection" | No construction necessary |

---

[1] This Court is well-versed in the law of claim construction.   Accordingly, Defendants will refrain from summarizing this law and instead will cite relevant law only as necessary and appropriate throughout their argument.

According to DietGoal, the claim terms "computerized meal planning" and "computerized planning" do not require construction because each only appears in a preamble.[2] (Plaintiff DietGoal Innovations LLC's Opening Claim Construction Brief (Dkt. 269) ("DietGoal Br.") at 19; Joint Claim Construction and Prehearing Statement Pursuant to P.R. 4-3 (Dkt. 253-1)).   However, "[i]f the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (quoting *Kropa v. Robie*, 187 F.2d 150, 152 (C.C.P.A. 1951)).   Furthermore, in determining whether or not a preamble is limiting, one must consider what the patentee actually invented:   "Whether to treat a preamble as a limitation is a determination 'resolved only on review of the entire[] . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.'"   *Catalina Marketing Int'l, Inc., v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)).

In the instant case, one cannot seriously dispute that the patentee's alleged invention is a system/method of computerized meal planning.   In fact, DietGoal "does not dispute that the inventions claimed in the '516 Patent are computer-implemented."   (DietGoal Br. at 19). Furthermore, after discussing the obesity problem in the United States, the patentee explains that "[t]he present invention can solve the above problems by providing a system and method for *computerized* behavior analysis, training, and planning. The system of programs can include a User Interface (UI), a Meal Database, a Food Database, Picture Menus, and a Meal Builder."

---

[2] The parties had originally included the term "meal planning" for construction.  However, because DietGoal has since dropped the claims containing this term, it is no longer being construed by the Defendants.

2

(Col. 2, ll. 16-20 (emphasis added); *see also* col. 1, ll. 8-11).   And, the Federal Circuit has repeatedly found that "[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention."   *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007).

Additionally, DietGoal distinguished certain prior art during the reexamination process by arguing that the prior art was not a *computerized* meal planner.   Specifically, in arguing that U.S. Patent No. 5,338,202 to Saari ("Saari") does not render claims 1-18 invalid, DietGoal argued that all of the independent claims of the '516 patent are limited to *computerized* meal planning:   "Independent claims 1 and 2 each recite a 'system of computerized meal planning' and independent claims 12 and 13 each recite a 'method of computerized planning.'   The claims to 'computerized' systems and methods are entirely consistent with the description of the inventions in the Present Patent."   (Response to Office Action, Reexam. No. 95/001,959 ("Response to Office Action"), at 20 (July 19, 2012) (Ex. A)).[3]   DietGoal then distinguished Saari on the basis that it "never uses the word 'computer' or ever suggests that the 'foldable carrying case' could be replaced by a 'computerized' system."   (*Id.* at 21).   "This language shows a clear reliance by the patentee on the preamble to persuade the Patent Office that the claimed invention is not [rendered invalid] by the prior art.   As such, the preamble is a limitation of the claims."   *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1348 (Fed. Cir. 2002); *see also Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1370 (Fed. Cir. 2003).

In short, the "computerized meal planning" and "computerized planning"[4] preamble claim terms "'give meaning to the claim and properly define the invention'" and should therefore

---

[3] Unless otherwise noted, all exhibits referred to herein are attached to the Declaration of Allan A. Kassenoff In Support of Defendants' Joint Responsive Claim Construction Brief.
[4] "Computerized planning" should be construed identically to "computerized meal planning" as the only "computerized planning" described anywhere in the '516 patent is planning meals.

be construed by the Court.  *In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994).  DietGoal can

hardly dispute the first part of Defendants' proposed construction; namely that "computerized

meal planning" means "planning a meal with a computer system."   Rather, DietGoal's sole

dispute is whether "'planning a meal' must be done 'without utilizing a network connection.'"

(DietGoal Br. at 19).   However, as the Patent Office already concluded during the recent

reexamination, the '516 patent does *not* disclose the utilization of a network connection.  (Office

Action, Reexam. No. 95/001,959 ("Office Action"), at 7 (Mar. 28, 2013) (Ex. B)).  Specifically,

during reexamination, the patentee sought to add new claims 33 and 59, each of which recited

that "the User Interface accesses the Database via a network."  (Response to Office Action at 4, 7

(Ex. A)).   The Patent Office rejected both claims for failure to comply with the written

description requirement:   "[T]he specification does not provide support for these newly added

claims.   In particular, Patent Owner points to FIG. 1 as supporting these newly added claims.

However, FIG. 1 does not show that the User Interface access the Database <u>via a network</u>."

(Office Action at 7 (emphasis in original) (Ex. B)).  DietGoal opted not to appeal this rejection.

(*See* Right of Appeal Notice, Reexam. No. 95/001,959 (July 5, 2013) (Ex. C)).  Through its

inaction, DietGoal abandoned the scope of the two rejected claims, allowing for the

reexamination certificate to be issued.   This clear disclaimer renders the negative limitation

within Defendants' proposed construction appropriate.  *Rheox, Inc. v. Entact, Inc.*, 276 F.3d

1319, 1325 (Fed. Cir. 2002) (holding that the scope of the patent excluded an embodiment –

even one, unlike here, actually disclosed in the written description – in light of the patentee's

cancellation of a claim covering the embodiment during prosecution in order to gain allowance).

    In its brief, DietGoal conveniently ignores the PTO's express finding on this point.

Instead, it argues that such written description exists because "[t]he '386 Patent, incorporated by

reference and to which the '516 Patent claims priority, expressly states that the 'dietary evaluation and training methods . . . may be accessed over the Internet.'" (DietGoal Br. at 15). DietGoal's argument, however, is premised on an incorrect statement of both law and fact.[5] Specifically, although Defendants do not dispute that the '386 patent discloses a network connection, the '516 patent does not incorporate the *entire* disclosure of the '386 patent.  Rather, the patentee only incorporated the portion of the '386 patent directed to behavior analysis:  "In an alternate embodiment, the Meal Database and the Food Database can incorporate a behavior analysis.  As explained in detail in pending U.S. patent applications Ser. Nos. 09/211,392, 09/461,664 [which issued as the '386 patent], and 09/734,711 (incorporated by reference), a behavior analysis comprises compiling and analyzing specific information on a user's instinctive preferences and tendencies." ('516 patent, col. 2, ll. 30-35).

The Federal Circuit addressed a similar situation in *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1379 (Fed. Cir. 2007), in which the plaintiff argued that the patent-in-suit incorporated by reference the entire disclosure of two priority patents.  The *Zenon* Court rejected this argument, concluding that "[t]he plain language expressly limits the incorporation to only relevant disclosures of the patents, indicating that the disclosures are not being incorporated in their entirety."  *Id.* at 1379 (holding that the incorporation by reference was limited to the "vertical skein" and not the entire disclosure); *see also Entegris, Inc. v. Pall Corp.*, 2008 WL 886034, at *10 (D. Mass. Mar. 31, 2008) (holding that the language "[t]he separation element . . . preferably may be composed of hollow fiber membranes of the type described in [the '789 patent], whose disclosure is hereby incorporated by reference" limited the incorporation by reference to "the preferred type of separation element – i.e., the filtering element itself").

---

[5] DietGoal chose not to raise this argument in the reexamination and cannot now ask for "a second bite at the abandoned apple."  *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1207-08 (Fed. Cir. 1992).

5

Similarly, the plain language of the '516 patent makes clear that it is only incorporating the portion of the '386 patent related to behavior analysis.  Although DietGoal may take issue with such a strict reading of the incorporation by reference language, "patent draftsmanship is an exacting art, and no less care is required in drafting an incorporation by reference statement than in any other aspect of a patent application.  The draftsman here made clear what was being incorporated by reference and, by difference, what was not."  *Zenon*, 506 F.3d at 1382 n.3.  Accordingly, Defendants' proposed construction is fully supported by the intrinsic record and should be adopted by the Court.

      2.      "Customized eating goal" (Proposed by Plaintiff) [Claims 1, 2, 3, 13, 30] / "Customized eating goals" (Proposed by Defendants) [Claims 2, 3, 13, 30]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| "Customized eating goal":  "a stored, user-specific, numeric dietary objective"  "Customized eating goals":  "two or more stored, user-specific, numeric dietary objectives" | "Customized eating goal" & "customized eating goals":  "user specific dietary preference(s) or objective(s)" |

Defendants' proposed construction for "customized eating goals" – the singular form of claim 1 resulted from a printing error[6] – has four separate requirements, each of which is fully supported by the intrinsic record.  Specifically, the customized eating goals must be (i) stored; (ii) user-specific; (iii) numeric; and (iv) dietary objectives.  DietGoal does not dispute that the customized eating goals are user-specific or that they are dietary objectives.  Accordingly, the

---

[6] "Customized eating goal" (claim 1) was erroneously printed in singular form when the USPTO issued the '516 patent.  To correct the error, the Court must order the term read as "customized eating goals," in plural form.  *See Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1131 (2006) (a court must correct an "obvious administrative error"); *accord I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 442 (1926) (correction is necessary to give claims "the meaning which was intended by the applicant and understood by the examiner"); *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1203 n.3 (Fed. Cir. 1992) (printing error). DietGoal admits that claim 1 as filed recited "customized eating goals," where "goals" is plural.  (Dkt. 261, ¶ 26).  DietGoal further admits that claim 1 was not amended during prosecution.  (Dkt. 261, ¶ 27).  Notwithstanding, DietGoal improperly seeks a windfall of additional claim scope that was neither sought by Dr. Alabaster nor examined by the USPTO during prosecution of the '516 patent.  (DietGoal Br. at 8-9).  Unmistakably, "customized eating goal" (claim 1) was erroneously printed in singular form due to an obvious administrative error when the USPTO issued the '516 patent.  Thus, the Court must order the term in Claim 1 read as "customized eating goals," in plural form.

6

primary disputes are whether the customized eating goals must be stored and numeric and whether they include a user's preferences.

The "customized eating goals" must be stored in the computer, rather than merely in the user's mind, if this phrase is to add meaning to the claims – as it must.  *See, e.g.*, *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (rejecting a proposed construction that would render a term "superfluous").  But, far from superfluous, the very crux of the '516 patent's alleged invention is a system that allows a user to change the components of a meal (using the Meal Builder) or her selections of complete meals (using the Picture Menus) and then shows the impact of the user's choices on her customized eating goals.[7] *See In re Venner*, 262 F.2d 92, 95 (C.C.P.A. 1958) (a key limitation cannot be "a mental step"). The specification explains that the Meal Builder "allows the user to view, in real time, the *impact* of food choices on customized eating goals, and the accumulated *impact* on daily nutrition allowance made by saved meals and snacks throughout the day."  (Col. 3, ll. 4-8) (emphasis added).  Similarly, the Picture Menus, like the Meal Builder, display the *impact* of the user's changes to meals on her goals, not merely leaving it to the user to take the nutritional information and make the comparison in her head.  (Col. 2, ll. 48-51) ("The Picture Menus provide a quick and easy system of dietary *impact* (including nutritional and caloric *impact*) controlled meals that the user can mix and match at various nutritional, caloric, and other levels.") (emphasis added). In order to be able to determine the impact of a user's various food choices on the user's customized eating goals, the goals must have been saved by the system.  After all, how could the system compare anything to a customized eating goal if the goal were not stored in memory.

Regardless of whether the goals are input by the user or determined by the system, every disclosed embodiment requires stored goals.  (Col. 5, ll. 8-9) ("the program has indicated, or the

---

[7] Every claim in the '516 patent requires either a Meal Builder or Picture Menus.

user has chosen, that he should follow a 1600 calorie diet.").  Similarly, every figure disclosing the Meal Builder and/or Picture Menus requires that the system act upon stored goals known to the system:



Fig. 4 (displaying Picture Menus and a "+" sign indicating the calories for the selected meals exceed the stored caloric goal).



Fig. 9 (displaying Meal Builder and message that calories "now exceed diet goals").

For the system to automatically determine and display the impact of a user's various food choices on the user's customized eating goals (such as exceeding a goal), the goals must have been saved by the system.  DietGoal reemphasized this point during the recent reexamination, stating unequivocally that the '516 patent disclosed a "'computerized [meal] planning' system/method [that] *does not invoke a mental process. . . .*"  (Response to Office Action at 22 (Ex. A) (emphasis added)).   Accordingly, DietGoal has disclaimed any construction of

8

"customized eating goals" that involves a mental process of the user, but its proposed construction permits the critical comparison function to be performed in the user's mind. *See N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345 (Fed. Cir. 2005) ("We agree with the district court's conclusion that the applicant, through argument during the prosecution, disclaimed inner walls of the base portion having any concavity."); *see also Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1373 (Fed. Cir. 2006) ("A surrender can occur by argument as well as by amendment.").

The specification also distinguishes prior art that simply calculates nutritional information about selected foods and displays the information – without the system comparing such information to the user's stored customized eating goals.

> U.S. Pat. No. 5,545,721 to Kuch discloses a system intended to teach individuals the relationship between the visual size and a few nutritional characteristics of portions of food . . . while showing a few nutritional characteristics of such portions.

(Col. 1, ll. 52-58).  The patentee then attempts to distinguish Kuch based on the fact that "Kuch does not allow the user to prepare and plan and adapt meals that will help the user meet his customized eating goals."  (Col. 1, ll. 63-65).  Thus, DietGoal's proposed construction improperly encompasses a system that it distinguishes in the specification.  *See, e.g., Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("That discussion in the written description supports the district court's conclusion that the claims should not be read so broadly as to encompass the distinguished prior art structure."); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.").  In short, the claimed system must have the ability to not only display dietary information (leaving it to the user to compare that information to her

9

internal goals), but also the ability to compare the dietary information to the customized eating goals.

The term "customized eating goals" should also be limited to numerical goals because the '516 patent only discusses numerical goals.[8]  *See Abbott Labs. v. Sandoz*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("[T]he claims cannot 'enlarge what is patented beyond what the inventor has described as the invention.'").  For example, the '516 specification refers to "values," "amounts," and "quantities" – each of which is numeric – in relation to the dietary goals or customized eating goals.

> No effective tools exist for either health processionals [sic] or the public that can adequately train people to understand and immediately recognize. the significance of (1) the impact of customized meals on *dietary goals*; (2) the *value and amount* of specific macro and micro nutrients in different foods; (3) the potentially harmful effects of other naturally occurring substances found in many foods; and (4) the relative *quantities* of different food choices.

(Col. 1, ll. 27-34 (emphasis added)).  Similarly, the patent discloses *numerical* nutritional and dietary goals when it describes the claimed "Meal Builder [as] a *scoring* system that allows the user to view, in real time, the impact of food choices on customized eating goals, and *the accumulated impact on daily nutrition allowance* made by saved meals and snacks through the day.  The approximate distribution of calories and nutrients for each meal and snack can be shown using a selected diet plan."  (Col. 3, ll. 4-10 (emphasis added); *see also* col. 4, ll. 21-27).

Further illustrations of the numerical limitation placed on "customized eating goals" occur throughout the specification.  Figure 4, for example, provides an exemplary screen shot in which the program has indicated, or the user has chosen, a customized eating goal of 1600

---

[8] Additionally, if the Court were to expand the scope of "customized eating goals" to include non-numeric goals, the public would not know the boundaries of the claimed invention.  *See, e.g., Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) ("Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention . . . .  Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims.").

calories, as shown in number and bar graph form.  (*See* col. 5, ll. 6-11).  "The user can view the current calorie level in a *bar graph and number form* on the Nutrient Indicator 465."  (Col. 5, ll. 35-37 (emphasis added)).  "Usually the user will try to make his choices closely match his *dietary goals*.  If the user exceeds those goals, he will receive a + Warning Signal 480."  (Col. 5, ll. 40-42 (emphasis added)). "[D]aily meals are combined (and modified) to produce a daily total of various nutrients which can vary only +/-5% from the *diet goals* before a warning appears. While following the Picture Menus, the user can track his progress."  (Col. 2, ll. 56-60 (emphasis added); *see also* col. 4, ll. 41-43).  Needless to say, one can only "exceed" a goal by 5% if the goal is numeric.

Finally, DietGoal's proposed construction should be rejected as it impermissibly seeks to expand the scope of the customized eating goals to encompass a user's "preferences" – a wholly distinct claim term.  In fact, the specification uses the term "preferences" no less than 8 times, each of which refers to something different than the claimed customized eating goals.  (*See, e.g.,* col. 2, ll. 36-41 ("In an exemplary embodiment, the behavior analysis can be a diet behavior analysis which compiles and analyzes specific information on a user's instinctive eating *preferences* and tendencies, and then compares the specific information to a set of *customized eating goals*.") (emphasis added)).  As such, it would be incorrect for the Court to construe the claim term "goal" as including a user "preference."  *See Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1269-72 (Fed. Cir. 2001) (declining to construe "plurality of different modes" to include transmission rates, where the patentee used the terms "rate" and "mode" to refer to "separate and distinct concepts" throughout the specification). Furthermore, the term "preference" also appears 5 times within the claims of the '516 patent. And, the Federal Circuit has repeatedly explained that "[o]ur precedent instructs that different

11

claim terms are presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008).

For all of these reasons, the Court should construe "customized eating goals" to mean "two or more stored, user-specific, numeric dietary objectives."

3.      "User Interface" [Claims 1, 2, 12, 13]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "An interface including hardware and software through which a user sends commands and views displayed results from the Database and which does not access the Database via a network" | "Software through which a user sends commands and views displayed results" |

There are three principal disputes relating to the construction of the phrase "User Interface."   First, DietGoal improperly seeks to limit the "User Interface" to *software* through which a user performs the recited functions, rather than software *and* hardware as required by the express language of the claim and the intrinsic record.     Second, DietGoal's proposed construction does not recognize that the commands sent by the user and the results displayed to the user must be from the Database, as required by the patent specification.   And, third, DietGoal's proposed construction seeks to improperly broaden the scope of the claim to encompass an interface which is accessible via a network despite a lack of support in the intrinsic record for such a claim as confirmed by the U.S. Patent Office during prosecution of the reexamination proceeding.

It cannot be credibly disputed that the "User Interface" requires both software and hardware.   Plaintiff and defendants agree that the User Interface must be capable of permitting a third party user to send commands and view displayed results.   Those requirements are entirely consistent with the specification, which indicates that "[t]he UI [User Interface] can receive commands from the user and display results to the user from the Picture Menus and Meal

Builder." (Col. 2, ll. 22-23).   Common sense dictates that hardware, such as a computer keyboard and a display, would be required to permit a user to send commands and view displayed results.   DietGoal's proposed construction is also inconsistent with the patent specification.   For example, in a preferred embodiment, the specification discloses that the user can make changes to meals and view the meals' impact on customized eating goals on the User Interface. (Col. 2, l. 65 – col. 3, l. 1).   Of course, making changes to meals as well as viewing the impact of those changes on a user's customized eating goals would require hardware such as a keyboard and display.   And, a construction which reads out a preferred embodiment is seldom, if ever, correct.   *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013).

The second dispute relates to whether the results displayed on the User Interface must be derived from the Database.   Once again, the plain language of the claims informs the analysis. Specifically, the claims require that the User Interface displays results *from the Database*:

- ". . . at least one Picture Menus, which displays on the User Interface meals from the Database. . . ." (Claim 1).

- ". . . a Meal Builder, which displays on the User Interface meals from the Database. . . ." (Claim 2).

- ". . . a Meal Builder, which displays on the User Interface meals from the Database, corresponding to the Picture Menus. . . ." (Claim 3).

- ". . . Picture Menus, which display on a User Interface meals comprised from the food objects from the Database. . . ." ( Claim 12).

- ". . . which displays on the User Interface the food objects from the meals from the Database. . . ." (Claim 13).

Even assuming, *arguendo*, that resort to the specification was required, the specification consistently discloses that the meals displayed on the User Interface are derived from the Database.   (*See, e.g.*, col. 2, ll. 46-48 ("The Picture Menus can display on the User Interface

13

meals from the Database that the user can mix and match and still meet customized eating goals."); col. 2, ll. 65-66 ("The Meal Builder can display on the User Interface meals from the Database. . . .")).  Finally, the patent's Fig. 1 contemplates the retrieval of information from databases for display via the claimed User Interface.

In an effort to overcome the express language of the claims and the specification, DietGoal relies upon two extrinsic dictionary definitions.[9]  But, it is black letter law that extrinsic evidence may not be used to contradict the intrinsic record.  *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1377 (Fed. Cir. 2001).

Third, plaintiff's attempt to expand the scope of the claims to potentially encompass an interface which is accessible via a network is equally unavailing.  As discussed above in connection with the terms "computerized meal planning" and "computerized planning," there is simply no support in the intrinsic record for a User Interface that accesses the Database via a network.  (*See supra* at 4-6).  Accordingly, the Court should construe "User Interface" to mean "an interface through which a user sends commands and views displayed results from the Database and which does not access the Database via a network."

4.      "Food objects" [Claims 1, 2, 12, 13]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "Food items and their corresponding nutritional and caloric data" | "Data representing one or more items of food" |

---

[9] An additional, independent basis exists to reject plaintiff's reliance on extrinsic dictionary definitions.  Proper reliance on extrinsic evidence must inform one of skill in the art how a term would have been understood at the time of the alleged invention.  *See, e.g., Takeda Pharm. Co. v. Handa Pharms., LLC*, 2012 WL 1243109, at *27 (N.D. Cal. Apr. 11, 2012).  While plaintiff claims a priority date of December 14, 1998 for the '516 patent (DietGoal Br. at 2), plaintiff cites to dictionaries from 2013 (*id.* at 14) and 1994 (*id.* at 14-15).  Given the rapidly evolving nature of the computer industry, neither dictionary constitutes reliable evidence upon which a person of skill in the art could determine the meaning of claim terms at the time of the alleged invention.  Furthermore, the 2013 dictionary definition isn't even for the term "User Interface."  Rather, it is for "graphical user interface," a narrower concept than the User Interface described in the '516 patent.

14

The term "food objects" should be construed as "food items and their corresponding nutritional and caloric data." The '516 patent describes the user's addition of "foods" as impacting nutritional and caloric data: "As foods are added or removed, the user will see the Dietary Impact Bar Charts 850 change immediately. In this example, the calorie, fat, and fiber intake is shown. This indicates the contribution each food makes to the user's nutrition and calorie intake." (Col. 6, ll. 38-42). Similarly, the patent explains that the "Meal Builder 120 incorporates a scoring system that allows the user to view, in real time, the impact of food choices on daily intake, and the accumulated impact on daily nutrition allowance made by saved meals and snacks throughout the day." (Col. 4, ll. 21-25). The claimed system could only calculate the dietary impact of food objects *if* the food objects included the nutritional and caloric data for each item of food.

5.      "Picture Menus" [Claims 1, 3, 6, 13] [10]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "Pictures of meals which can be mixed and matched by a user to meet customized eating goals" | "At least one digital image of a meal" |

The primary dispute between the parties is whether the "Picture Menus" are used by a user to mix and match meals in order to meet the user's customized eating goals. As demonstrated below, Defendants' proposed construction is consistent with the teaching in the specification and should therefore be adopted by the Court, particularly because Picture Menus is a coined term with no meaning except that provided by the specification. *Collins v. Nissan N. Am., Inc.*, 2013

---

[10] DietGoal argues in its opening brief that the '516 patent is a descendent of an application originally filed on December 14, 1998 and that the '516 patent is therefore "entitled to a priority date of December 14, 1998." (DietGoal Br. at 1). Needless to say, Defendants dispute this argument and reserve all rights to demonstrate why the patent-in-suit is not entitled to the 1998 filing date when it files a motion for summary judgment of invalidity. In fact, the claim terms Picture Menus, Meal Builder, User Interface and customized eating goals only first appear in the '516 patent specification.

15

WL 448923, at *7 (E.D. Tex. Feb. 6, 2013) (Gilstrap, J.) ("The parties likewise agreed that the best way to interpret an inventor-coined term is to look for a definition in the specification.").

The specification repeatedly provides that "[t]he Picture Menus 115 are a quick and easy system of dietary impact controlled instant meals that the user can mix and match at various nutritional, caloric, and other levels." (Col. 3, l. 66 – col. 4, l. 1). Furthermore, the patentee explained that the purpose of "mixing and matching meals" is to enable the user to meet his customized eating goals: "The Picture Menus can display on the User Interface meals from the Database that *the user can mix and match and still meet customized eating goals*." (Col. 2, ll. 46-48 (emphasis added); *see also* col. 2, ll. 48-52). Similarly, the description of the '516 patent's figures further illustrate the requirement that the Picture Menus are used to mix and match meals to meet a user's customized eating goal:

> FIG. 5 is an exemplary screen shot 500 illustrating a use of the Picture Menus 115. The user has already indicated a Breakfast Choice 411 and Lunch Choice 416. The user chooses a Dinner Choice 421 comprising barbequed chicken, baked potatoes, and beans. The user views the Dietary Impact 465 . . . of the Dinner Choice 421 on his daily allowance, and sees that with his dinner choice, he has used 1650 (more than his allocated 1600) calories.

(Col. 5, ll. 48-56; *see also* col. 5, ll. 58-64). In other words, after the user adds a dinner choice (*i.e.,* she has mixed and matched meals), the system indicates how this choice impacts her customized eating goals (in this case, she has exceeded her 1600 calorie allotment). Tellingly, every disclosed embodiment of Picture Menus permits the user to mix and match the images.

Defendants' proposed construction is also consistent with the usage of the term "menu" in the computer field. Specifically, as defined in DietGoal's own extrinsic evidence, a computer menu is "[a] list of options displayed to the user by a data processing system, from which the user can select an action to be initiated." (Dkt. 269-9; *see also* Dkt. 269-8). Here, the '516 patent's Picture Menus are simply lists of food options (*i.e.,* the "list of options displayed to the

16

user") from which a user can mix and match meals to meet customized eating goals (*i.e.,* the "action to be initiated").

In addition to ignoring all of the specification excerpts discussed above, DietGoal's construction suffers from failing to recognize the plain meaning of the plural term Picture Menus.  By including a single digital image of a meal, the definition conflicts with the plain meaning of the term.  In short, Defendants' proposed construction is supported by both the intrinsic and extrinsic evidence.  Accordingly, the Court should construe "Picture Menus" as "pictures of meals which can be mixed and matched by a user to meet customized eating goals."

6.      "Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal[s]" [Claim 1]

| Defendants' Proposed Construction | DietGoal's Proposed Construction |
|---|---|
| Function: "displays on the User Interface meals from the Database that a user can select from to meet customized eating goals"<br><br>Structure:  software that generates the screen shots identified as Picture Menus 115 shown in Figs. 4-7, and 10. | Not governed by § 112, ¶ 6 |

When the term "Picture Menus" is incorporated into the longer phrase set forth above, it should be deemed a means-plus-function claim term governed by 35 U.S.C. § 112, ¶ 6.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 (1997) ("[A]n applicant can describe an element of his invention by the result accomplished or the function served, rather than describing the item or element to be used.").  While this term is presumed not to fall under § 112, ¶ 6 because it does not recite the word "means," that presumption is overcome.  Specifically, "Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal[s]" is a "coined term" lacking a clear meaning outside of the context of the patent.  And, the Federal Circuit has held that where the

term in question is a "coined term lacking a clear meaning, such as 'widget' or 'ram-a-fram,'" it should be construed pursuant to § 112, ¶ 6.  *Personalized Media Commc'ns, LLC v. ITC*, 161 F.3d 696, 704 (Fed. Cir. 1998); *see also Yodlee, Inc. v. CashEdge, Inc.*, 2006 WL 1883342, at *3 (N.D. Cal. July 7, 2006) (construing the coined term "gatherer" as means-plus-function in the context of a software patent).  The presumption is overcome for a second reason; namely, the "claim term fails to recite sufficiently definite structure . . . for performing [the claimed] function."  *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004).

As in *Yodlee*, the coined term "Picture Menus, which displays . . ." should be construed under § 112, ¶ 6 as a means-plus-function limitation.  Construction of a limitation under 35 U.S.C. § 112, ¶ 6 requires determining the claimed function and identifying corresponding structure that is both disclosed in the specification and linked to the function.  *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999).

This limitation recites two functions performed by Picture Menus: 1) "display[ing] on the User Interface meals from the Database," and 2) allowing "a user [to] select from to meet customized eating goal[s]."  After identifying the function, the next step in construing a § 112, ¶ 6 claim is to identify the "corresponding structure in the written description that performs that function."  *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005). The structure that corresponds to the first function is some undefined software that draws each food item of a meal on a virtual plate.  (Col. 2, ll. 46-48).  The "Picture Menus" cannot simply show static images of meals, but must generate images of meals based on their content to allow a "user [to] change content of said meals" in the Meal Builder as required by claim 3.  (Col. 7, ll. 10-14).  The structure that corresponds to the second function is software that allows the user to

18

select displayed meals (*e.g.*, Breakfast Choice 411) to meet customized eating goals (*e.g.*, Nutrient Indicator 465).  (Col. 5, ll. 15-16, 36-42; Fig. 4).[11]

For all of the foregoing reasons, the Court should apply 35 U.S.C. § 112, ¶ 6 to the claim term "Picture Menus, which displays . . ." and adopt the function and structure proposed by Defendants.

7.      "Meal" / "Meals" [Claims 1-3, 6, 12-13]

| Defendants' Proposed Construction | DietGoal's Proposed Construction |
|---|---|
| No construction necessary | Plain meaning (*i.e.*, "one or more food objects") |

Both parties ostensibly agree that the terms "meal" and "meals" should be construed pursuant to their plain meaning.  As recognized by this Court, where a term is "used according to its plain meaning," which would be generally understood by laymen, then it "does not require construction."  *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 734 (E.D. Tex. 2005). However, after agreeing to apply plain meaning, DietGoal provides an example of a "meal" which is entirely inconsistent with the term's plain meaning.  Moreover, DietGoal's proposed construction of "one or more food objects" is at odds with the specification of the '516 patent, which indicates the plain meaning of the term (when used in the singular) to be exactly what a layman would interpret the term to mean – namely, breakfast, lunch, dinner, or a snack.  (Col. 4, ll. 31-32 ("In step 210, the user chooses meals (breakfast, lunch, dinner, and snacks) for a day.")).  And, where "[t]he specification . . . confirm[s] that th[e] plain meaning is appropriate in the context of th[e] claim limitation," such meaning should be adopted by the Court.  *Pass &*

---

[11] The recited structural terms – User Interface and Database – do not perform the function of this limitation, but instead are objects manipulated *by* the "Picture Menus."  Similarly, the "Picture Menus" – a "coined term" with no self-evident meaning – does not provide sufficient structure to perform the recited function because "picture(s)" are simply information to be displayed and cannot "display on the User Interface meals from the Database" as required by the claim.

19

*Seymour, Inc. v. ITC*, 617 F.3d 1319, 1324 (Fed. Cir. 2010).  As such, the Court should reject DietGoal's attempt to distort the plain meaning of the terms "meal" and "meals."

        8.        "Meal Builder" [Claims 2, 3, 6, 13, 41]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| "A computerized function that allows the user to change a meal and visually indicates the meal's impact on customized eating goals" | "A computer program for designing and modifying meals" |

The term "Meal Builder" should be construed to mean "a computerized function that allows the user to change a meal and visually indicates the meal's impact on customized eating goals."  DietGoal's proposed construction – "a computer program for designing and modifying meals" – is quite similar to the first portion of the Defendants' construction.  But, it should be rejected because it omits the requirement that the Meal Builder "also visually indicates the meal's impact on customized eating goals."  As demonstrated below, both portions of Defendants' proposed construction are fully supported by the intrinsic record and should, therefore, be adopted by the Court.

The '516 patent's specification repeatedly confirms that the Meal Builder allows a user to change a meal and then view the impact of such change on the user's "customized eating goals."  For example, the patent explains that "*[t]he Meal Builder* can display on the User Interface meals from the Database, corresponding to the Picture Menus, *where the user can change and view the meals' impact on customized eating goals*."  (Col. 2, l. 65 – col. 3, l. 1 (emphasis added)).  Similarly, "*[t]he Meal Builder* can be a scoring system that *allows the user to view, in real time, the impact of food choices on customized eating goals . . . .*"  (Col. 3, ll. 4-6 (emphasis added)).  The '516 patent's figures also demonstrate that the Meal Builder visually indicates the meal's impact on customized eating goals.  For example, "FIG. 10 [reproduced below] is an exemplary screen shot 1000 of a use of the Meal Builder 120, as accessed in the Picture Menus

115. . . . *The user can also see the Dietary Impact 465 of the meal change*, with the inclusion of the Carrot Choice 905." (Col. 6, ll. 53-60 (emphasis added); *see also* Figs. 8-9).



**FIG.10**

The claim language also supports Defendants' proposed construction.  For example, claim 2 makes it abundantly clear that the Meal Builder enables "a user [to] change content of said meals *and* view the resulting meals' impact on customized eating goals."[12]   (Emphasis added).  And, it is well-settled that "[i]n construing claims, the analytical focus must begin and remain centered on the language of the claims themselves . . . ."  *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).  In fact, the Federal Circuit confronted this exact issue in *Pause Tech. LLC v. TiVo Inc.*, in which it affirmed the district court's claim

---

[12] Claims 3 and 13 contain the virtually identical language.

21

construction of "circular storage buffer" as the court's construction was based upon language that appeared later in the claim:

> The parties dispute how the claimed "circular storage buffer" must operate to store digital signal values in memory and, specifically, whether the claim is broad enough to cover a buffer implemented through purely logical addressing. *The "write over" clause and other language appearing later in the claim detail how the buffer employs addressing to store digital signal values in memory. There is no basis for us to ignore that language in properly construing the claim language in dispute.*

419 F.3d 1326, 1331 (Fed. Cir. 2005) (emphasis added); *see also id.* at 1333 ("[W]e agree that the district court's claim construction stayed true to the claim language as it is used in the context of the claim itself.").

Defendants' proposed construction is also supported by the prosecution history. Specifically, during reexamination, the patentee distinguished the prior art Saari reference by arguing that Saari lacked a Meal Builder. (Response to Office Action at 27 (Ex. A) ("Saari Does Not Disclose or Suggest A 'Meal Builder'")). According to the patentee, the Saari reference lacked the claimed Meal Builder because it "does not disclose or suggest any way to 'view the resulting meals' impact' on customized eating goals." (*Id.* at 28). The patentee continued: "Even assuming that Saari allowed the user to change the content of meals, Saari teaches away from allowing a user to 'view the resulting meals' impact on customized eating goals." (*Id.*) Accordingly, the patentee argued that "Saari neither discloses nor suggests a 'Meal Builder' as recited in" the '516 patent. (*Id.*) In short, DietGoal has disclaimed any construction of "Meal Builder" that does not include the requirement that the Meal Builder "visually indicates the meal's impact on customized eating goals." *See N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345 (Fed. Cir. 2005) (finding a disclaimer based on the patentee's "argument during the prosecution").

22

DietGoal's principal dispute with Defendants' proposed construction is that it "redundantly incorporates limitations that are explicitly claimed elsewhere in the '516 Patent's claims." (DietGoal Br. at 13). However, the Federal Circuit has previously rejected this exact argument. *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 707 (Fed. Cir. 1997) (reversing the district court's claim construction based in part on redundancy between two constructions because the redundancy resulted in "mutually reinforcing definitions rather than being superfluous"). Moreover, inserting DietGoal's proposed construction into the third limitation of claim 2 likewise creates a redundancy:

> A computer program for designing and modifying meals, which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals.

Specifically, DietGoal's proposed construction (in blue) is redundant with the portion of the claim in red. Accordingly, to the extent that DietGoal faults Defendants' proposed construction for allegedly creating a redundancy with other claim language, DietGoal's own construction suffers from the same alleged flaw.

In short, Defendants' proposed construction is consistent with the specification, the claim language itself and the prosecution history of the '516 patent. Accordingly, the Court should construe "Meal Builder" as "a computerized function that allows the user to change a meal and visually indicates the meal's impact on customized eating goals."

9.   "Meal Builder, which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals" [Claim 2]

| Defendants' Proposed Construction | DietGoal's Proposed Construction |
| --- | --- |
| Function: "display[ing] on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals" | Not governed by § 112, ¶ 6 |

23

| Structure:  software that generates the screen shots identified as Meal Builder 120 shown in Figs. 8 and 9 and described at col. 6, ll. 5-51. | |

When the term "Meal Builder" is incorporated into the longer phrase set forth above, it should be deemed a means-plus-function claim term governed by 35 U.S.C. § 112, ¶ 6.  *See Warner-Jenkinson*, 520 U.S. at 27.  While this term is presumed not to fall under § 112, ¶ 6 because it does not recite the word "means," that presumption is overcome.  Specifically, "Meal Builder, which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals" is a "coined term" lacking a clear meaning outside of the context of the patent and, thus, should be construed pursuant to § 112, ¶ 6.  *Personalized Media Commc'ns*, 161 F.3d at 704; *see also Lighting World*, 382 F.3d at 1358.

As in *Yodlee*, the coined term "Meal Builder, which displays . . ." should be construed under § 112, ¶ 6 as a means-plus-function limitation.  2006 WL 1883342, at *3.  This limitation recites two functions being performed: 1) "displays on the User Interface meals," and 2) "wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals."  The structure that corresponds to the first function is some undefined software that draws each food item of a meal on a virtual plate.  (Col. 6, ll. 30-41).  The "Meal Builder" cannot simply show a static image of a meal, but must display each individual food item to allow a user to add, remove, or resize the item to allow the "user [to] change content of said meals," as required by the second function.  (*See id.*)  The structure that corresponds to the second function is software that lists additional food items (*e.g.,* Foods 805) to be added or software that allows the modification and/or removal of existing food items (*e.g.,* a "plus or minus button" to change the portion size and an "'X' button" to remove an item).  (Col. 6, ll. 30-

24

37; Fig. 8).  The structure that corresponds to the second function must also calculate and display the impact of the user's food choices on the user's goals.  (Col. 6, ll. 38-43 ("As foods are added or removed, the user will see the Dietary Impact Bar Charts 850 change immediately. In this example, the calorie, fat, and fiber intake is shown.  This indicates the contribution each food makes to the user's nutrition and calorie intake."); Fig. 8).

For all of the foregoing reasons, the Court should apply 35 U.S.C. § 112, ¶ 6 to the claim term "Meal Builder, which displays . . ." and adopt the function and structure proposed by Defendants.

> 10.   "Meal Builder, which displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals" [Claims 13, 14]

| Defendants' Proposed Construction | DietGoal's Proposed Construction |
| --- | --- |
| Function: "displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals"<br><br>Structure:  software that generates the screen shots identified as Meal Builder 120 shown in Figs. 8 and 9 and described at col. 6, ll. 5-51, where Meal Builder 120 is integrated with Picture Menus 115 as depicted in step 220 of Fig. 2 and described at col. 4, ll. 37-41. | Not governed by § 112, ¶ 6 |

The analysis of this claim limitation is virtually identical to that of the previous "Meal Builder" limitation.  The only significant difference is the presence of an additional limitation requiring either the Meal Builder or the displayed meals to "correspond[] to the Picture Menus." (*See* Fig. 1 (depicting an arrow connecting Picture Menus and Meal Builder)).  Accordingly, this limitation requires additional structure (software) to integrate the Meal Builder with the Picture

25

Menus.  (Col. 4, ll. 28-41 ("FIG. 2 is a flow chart illustrating an exemplary overview process 200. . . .   In an exemplary embodiment, the Picture Menus 115 are based upon the following distribution of calories: breakfast 25%, lunch 30%, snacks/beverages 15%, dinner 30%.  These levels can be changed when the meals are edited using Meal Builder 120.")).  For all of the foregoing reasons, the Court should adopt Defendants' proposed construction.

11.    "View the resulting meals' impact on customized eating goals" [Claims 2, 3] / "View the meals' impact on customized eating goals" [Claims 13, 14]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "View a visual representation of the relationship between the cumulative dietary impact for the meals and the stored customized eating goals" | "View a visual representation of the effect on the customized eating goal of a change to one or more meals" |

The principal dispute relating to this phrase is whether the claims require that the Meal Builder store cumulative dietary information for a particular user to permit the user to view the impact of changes in the content of meals on the user's customized eating goals.   The specification uniformly describes the Meal Builder as displaying the relationship between changes to meal choices by a user and the goals of the specific user – not changes to the goals themselves.   Specifically, every disclosed embodiment of the Meal Builder contemplates that "[a]s foods are added or removed, the user will see the Dietary Impact Bar Charts 850 change immediately. . . .   This indicates the contribution each food makes to the user's nutrition and calorie intake."  (Col. 6, ll. 38-40).

The express language of the claims contemplates that the Meal Builder displays the impact of changes to "meals" (plural) to assess how those changes impact a user's personal eating goals.   By consistently referring to the meals' impact (plural), the claim language necessitates displaying the cumulative impact, rather than only the impact of a change to a single meal.   This construction is entirely consistent with the specification.   In particular, every

26

disclosed embodiment describes how the "Meal Builder 120 incorporates a scoring system that allows the user to view, in real time, the impact of food choices on daily intake, and the *accumulated impact* on daily nutrition allowance made by saved meals and snacks throughout the day." (Col. 4, ll. 21-25 (emphasis added)).

DietGoal apparently also disputes that the customized eating goals must be stored.  The claims each relate to systems and methods of computerized meal planning.  There can be no meaningful dispute that such a system requires storage of a user's customized eating goals to permit the calculation and display of changes to meals on the user's stored goals.  (*See supra* at 6-12).   And, the specification consistently discloses that the meals are stored or saved in a database for subsequent access by the Meal Builder.  (*See, e.g.,* col. 2, l. 65 – col. 3, l. 1 ("The Meal Builder can display on the User Interface meals *from the Database* . . . .") (emphasis added); *see also* col. 4, ll. 21-25 ("Meal Builder 120 incorporates a scoring system that allows the user to view, in real time, the impact of food choices on daily intake, and the accumulated impact on daily nutrition allowance made by *saved* meals and snacks throughout the day.") (emphasis added)).

12.   "Which display on a User Interface meals comprised from food objects from the Database" [Claim 13] / "Which displays on the User Interface meals from the Database" [Claims 1-3]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| The term does not need construction beyond construction for the terms "User Interface," "food objects" and "meals" | The term does not need construction beyond construction for the terms "food objects" and meals" |

13.   "Value" [Claims 24, 49]

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| "An assigned or calculated numerical quantity" | Plain meaning |

The term "value" should be construed to mean "an assigned or calculated numerical quantity."  DietGoal alleges that no construction is necessary because the plain meaning should

27

govern.  However, DietGoal then proceeds to argue in its opening brief that the term "value" includes such things as "high fiber" and "low fat," which are clearly inconsistent with the plain meaning of the term.  (*See* DietGoal Br. at 20).

To better understand the term "value," it is helpful to examine it in the context of an asserted claim:  "The system of claim 1, wherein the one or more displayed meals correspond to a least one of a selected nutritional value, a selected caloric value, a selected personal characteristic, and a selected activity level." (Claim 24).[13]  Accordingly, the claimed "value" can be either a nutritional one or a caloric one.  But, in either case, the value must be a numerical quantity (*e.g.,* 1000 calories) because the '516 patent only teaches numerical values.

The specification begins by indicating what is lacking in the prior art:  "No effective tools exist for either health processionals [sic] or the public that can adequately train people to understand and immediately recognize the significance of (1) the impact of customized meals on dietary goals; [and] (2) *the value and amount of specific macro and micro nutrients in different foods . . . .*" (Col. 1, ll. 27-31 (emphasis added)).  In other words, according to the patentee, one of the reasons that the alleged invention was novel is that it assists the user in recognizing the numerical value of "specific macro and micro nutrients in different foods."  And, it is well-settled that statements made by a patentee in the specification to distinguish the prior art – such as to values that are numerical – can limit the scope of the claimed invention.  *See, e.g., Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("That discussion in the written description supports the district court's conclusion that the claims should not be read so broadly as to encompass the distinguished prior art structure."); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing

---

[13] Asserted claim 49 is identical to claim 24 except that it depends from claim 2.

the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.").

After distinguishing the prior art, the patent repeatedly discloses *numerical* nutritional and dietary goals.  For example, the claimed "Meal Builder can be a *scoring system* that allows the user to view, in real time, the impact of food choices on customized eating goals, and *the accumulated impact on daily nutrition allowance* made by saved meals and snacks throughout the day.  The approximate distribution of calories and nutrients for each meal and snack can be shown using a selected diet plan."  (Col. 3, ll. 4-10 (emphasis added); *see also* col. 4, ll. 21-27)).  Needless to say, 56 grams of protein or 2000 calories would be a "daily nutrition allowance" while "low fat" or "gluten free" would not.

Furthermore, after the user changes a meal, the claimed system conveys the numerical "impact" of that change to the user.  For example, Figure 6 depicts the numerical dietary impact of the user's addition of grapes to his daily meals.  As explained by the specification, "[t]he user views the Dietary Impact 465 of the grapes on his daily allowance, and sees that the addition of the grapes makes it so he has used 1750 instead of 1650 calories."  (Col. 5, ll. 62-64).  Similarly, the patent explains that the alleged invention triggers a warning after a user exceeds his chosen numerical value by 5%:  "[T]he invention can define the user's *nutritional, caloric and other needs* and let the user choose the diet he wants to follow. In response to data input regarding personal characteristics and activity level, calorie goals are defined, and *daily meals are combined (and modified) to produce a daily total of various nutrients which can vary only +/-5% from the diet goals before a warning appears*."  (Col. 2, ll. 52-59 (emphasis added); *see also* col.

4, ll. 3-11 (same); col. 5, ll. 41-42 ("If the user exceeds those goals, he will receive a + Warning Signal 480.")).  One cannot "exceed" a value by 5% unless the value is numeric.[14]

According to DietGoal, Defendants' proposed construction "is flawed because the 'value' given need not be numerical."  (DietGoal Br. at 20).  However, there is not a single disclosure in the specification of a non-numerical value.  *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006) ("the claims cannot be of broader scope than the invention that is set forth in the specification"); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002) ("[w]hat is claimed by the patent application must be the same as what is disclosed in the specification").  To the contrary, as explained above, the entire disclosure of the '516 patent is directed to *numerical* values.  And, "'the interpretation to be given a term can only be determined and confirmed with a *full understanding of what the inventors actually invented and intended to envelop with the claim*.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (emphasis added). In short, because Defendants' proposed construction is consistent with both the intrinsic and extrinsic evidence, the Court should construe "value" as "an assigned or calculated numerical quantity."

## II.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court adopt their proposed constructions.[15]

---

[14] Defendants' proposed construction is also supported by the extrinsic evidence.  Specifically, *The American Heritage College Dictionary*, Third Edition (1997) as well as *Webster's II New Riverside Dictionary* (1996) define "value" consistently with Defendants' proposed construction.  (*See The American Heritage College Dictionary*, Third Edition (1997) (Ex. D) ("Math: An assigned or calculated numerical quantity."); *Webster's II New Riverside Dictionary* (1996) (Ex. E) ("Math:  A calculated or assigned numerical quantity.")).

[15] As indicated in the parties' Joint Claim Construction and Prehearing Statement Pursuant to P.R. 4-3 (Dkt. 253), Defendants contend that the claim terms "nutritional value" and "personal characteristic" are indefinite.  To the extent that Defendants intend to move for summary judgment of invalidity on this basis, any relevant argument would be included in Defendants' letter brief regarding dispositive motions, due on March 10, 2014.  (*See* Order Amending Docket Control Order (Dkt. 236)).

30

Dated:  January 17, 2014

/s/  *Allan A. Kassenoff*
Scott J. Bornstein
New York State Bar No. 2737492
Email:  bornsteins@gtlaw.com
Allan A. Kassenoff
New York State Bar No. 2964575
Email:  kassenoffa@gtlaw.com
Julie P. Bookbinder
New York State Bar No. 4375259
Email:  bookbinderj@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone:  212-801-9200
Facsimile:  212-801-6400
**Attorneys For Defendant General Mills
Sales, Inc.**

KING & SPALDING LLP

/s/ *Truman H. Fenton*
R. William Beard, Jr.
State Bar No. 00793318
wbeard@kslaw.com
Truman H. Fenton
State Bar No. 24059742
tfenton@kslaw.com
KING & SPALDING LLP
401 Congress Avenue, Suite 3200
Austin, Texas 78701
Telephone:  (512) 457- 2026
Fax:  (512) 457-2100
**Attorneys for Defendant Tyson Foods,
Inc.**

FISH & RICHARDSON P.C.

By: /s/ *Neil J. McNabnay*
Thomas M. Melsheimer
txm@fr.com
Texas Bar No. 13922550
Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583

Thomas B. Walsh IV
walsh@fr.com
Texas Bar No. 00785173
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

Jennifer N. Scarpati
scarpati@fr.com
FISH & RICHARDSON P.C.
601 Lexington Avenue - 52nd Floor
New York, NY 10022-4611
Telephone: (212) 641-2257
Facsimile: (212) 258-2291
***Attorneys for Defendants and Counterclaim Plaintiffs, Doctor's Associates, Inc. d/b/a Subway, Chipotle Mexican Grill, Inc. and Red Robin International, Inc.***

By:  */s/ J. Thad Heartfield*
J. Thad Heartfield
Texas Bar No. 09346800
E-mail: thad@jth-law.com
M. Dru Montgomery
Texas Bar No. 24010800
E-mail: dru@jth-law.com
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Telephone:  (409) 866-3318
Fax:  (409) 866-5789
***Attorneys For Defendant Deli Management, Inc. D/B/A Jason's Deli***

*/s/ Meredith J. Fitzpatrick*
Kevin L. Daffer
State Bar No. 05307300

kdaffer@dmtechlaw.com
Jeff A. McDaniel
State Bar No. 13518020
jmcdaniel@dmtechlaw.com
Meredith J. Fitzpatrick
State Bar No. 24059753
mfitzpatrick@dmtechlaw.com
DAFFER MCDANIEL LLP
901 S. MoPac Expressway
Building III, Suite 310
Austin, Texas 78746
Telephone:  (512) 476-1400
Fax:  (512) 703-1250
***Attorneys for Defendant Whataburger***
***Restaurants, LLC***

NOVAK DRUCE CONNOLLY BOVE
+ QUIGG LLP

/s/ *Marcus T. Hall*
Marcus T. Hall
555 Mission Street, Suite 3400
San Francisco, California 94105
Telephone: (415) 814-6161
Facsimile: (415) 814-6165
marcus.hall@novakdruce.com

Greg Novak (Lead Counsel)
Texas State Bar No. 15119600
1000 Louisiana St.
Fifty-Third Floor
Houston, TX 77002
Telephone:  (713) 571-3400
Facsimile:   (713) 456-2836
greg.novak@novakdruce.com

Henry A. Petri
Texas State Bar No. 15850600
300 New Jersey Ave, N.W. Fifth Floor
Washington, D.C. 20001
Telephone:  (202) 659-0100
Facsimile:   (201) 659-0105
hank.petri@novakdruce.com
***Attorneys For Defendant***
***Marco's Franchising, LLC***

33

/s/ Stafford Davis
Stafford Davis
Lead Counsel
State Bar No. 24054605
**THE STAFFORD DAVIS FIRM, PC**
305 S. Broadway, Suite 406
Tyler, Texas 75702
(903) 593-7000
sdavis@stafforddavisfirm.com

Andy Tindel
Texas Bar No. 20054500
MT2 Law Group
**MANN | TINDEL | THOMPSON**
112 East Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 596-0909
Email: atindel@andytindel.com
***Attorneys For Third-Party***
***Plaintiff Mrs. Fields Famous Brands,***
***LLC***

/s/     C. Dale Quisenberry
C. Dale Quisenberry
State Bar No. 24005040
dquisenberry@pqelaw.com
John T. Polasek
State Bar No. 16088590
tpolasek@pqelaw.com
Jeffrey S. David
State Bar No. 24053171
jdavid@pqelaw.com
POLASEK, QUISENBERRY & ERRINGTON,
LLP
6750 West Loop South, Suite 920
Bellaire, Texas 77401
Telephone: (832) 778-6000
Facsimile: (832) 778-6010

Deborah Race
State Bar No. 16448700
drace@icklaw.com
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
P.O. Box 7879

Tyler, Texas 75711
Telephone: (903) 561-1600
Facsimile: (903) 581-1071
***Attorneys For Defendant Taco John's***
***International, Inc.***

/s/ M. Scott Fuller
M. Scott Fuller
Texas Bar No. 24036607
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201-6776
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800
E-mail: sfuller@lockelord.com
***Attorney For Defendant***
***Genghis Grill Franchise Concepts, L.P.***

35

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 17th day of January, 2014. Any other counsel of record will be served by facsimile transmission and first class mail.


_____ /s/  *Allan A. Kassenoff*_____
Allan A. Kassenoff