# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

DIETGOAL INNOVATIONS LLC    §
           §
   v.          §
           §
KELLAN RESTAURANT MANAGEMENT   §
CORP. D/B/A 54TH STREET GRILL, et al.   §

Case No. 2:12-CV-00761-JRG-RSP
(Consolidated)
LEAD CASE

## CLAIM CONSTRUCTION
## MEMORANDUM AND ORDER

On February 4th, 2014, the Court held a hearing to determine the proper construction of the disputed claim terms in U.S. Patent No. 6,585,516 (the "'516 Patent"). After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 269, 278, 287, and 292), the Court issues this Claim Construction Memorandum and Order.

## BACKGROUND

The '516 Patent issued with 18 claims on July 1, 2003 based upon an application filed January 9, 2002. An *inter partes* reexamination resulted in the issuance of a Reexamination Certificate on October 2, 2013. The reexamination confirmed the patentability of claims 1-18, added new claims 19-61 and added a priority claim through a series of prior applications, the earliest of which dates to December 14, 1998. The '516 Patent relates to a computerized visual behavior analysis, training and planning system for dietary management. '516 1:8-13[1], Abstract. A Picture Menu is provided so that a user may choose meals for a particular time period to correspond to a customized eating plan. '516 Abstract, Figures 4-7. A Meal Builder allows a user to edit or create new meals. '516 Abstract, Figures 8-9.

---

[1] References to the '516 Patent are made in the form of '516 col:lines.

## APPLICABLE LAW

**1.     Claim Construction**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *See id.* at 1313.  *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id.*  Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id.*  Differences among the claim terms can also assist in understanding a term's meaning.  *Id.*  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or

may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## 2.    Means-Plus-Function Limitations

The parties dispute whether the asserted patent contains means-plus-function limitations that require construction. Where a claim limitation is expressed in "means plus function" language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112, ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112, ¶ 6 mandates that "such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (citing 35 U.S.C. § 112, ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id*.

Construing a means-plus-function limitation involves multiple steps. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim."

*Id.* Moreover, the focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.*

## DISCUSSION

### 1. "computerized meal planning" [Claims 1, 2] / "computerized planning" [Claim 13]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The preamble is not a limitation. No construction necessary. | "planning a meal with a computer system without utilizing a network connection" |

The parties dispute whether these preamble terms are limitations and, if limitations, whether the computer system must be utilized without a network connection.

DietGoal

DietGoal states that the parties do not dispute that the '516 Patent relates to computer-implemented inventions as the body of the claims makes this clear. Dkt. 287 at 1. DietGoal asserts that the Court should, however, follow the general rule regarding preambles and decline to construe the preamble language. Dkt. 287 at 1 (citing *Allen Eng'g Corp. v. Bartell Indus', Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)).

DietGoal asserts that Defendants' construction conflicts with the '386 Patent to which the '516 Patent claims priority. DietGoal asserts that the '516 Patent incorporates by reference the application for the '386 Patent (Application No. 09/461,664) and Application 09/211,392. DietGoal asserts that the '386 Patent is replete with descriptions of the use of a network such as the Internet and that dependent claim 7 of the '386 Patent expressly claims the Internet. Dkt. 269 at 19 (citing '386 9:7-24, 10:1-3, claim 7). For example, DietGoal cites to "dietary evaluation

and training methods according to the preferred embodiment are advantageously made available at a website where they may be accessed over the Internet." '386 Patent 9:7-11. Likewise DietGoal points to the '392 Application's reference that the "database may be stored…on a remote internet based server." '392 Application at ¶ [0063].

DietGoal further asserts that Defendants' construction conflicts with the PTO's interpretation of the claims in reexamination: "the claims are interpreted to require a computer to be used in the claimed method or system." Nonfinal Action Closing Prosecution at 8-9 (Dkt. 269 Ex. E).

<u>Defendants</u>

Defendants assert that the relevant law is:

> [i]f the clam preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F. 3d 1298, 1305 (Fed. Cir. 1999) (quoting *Kropa v. Robie*, 187 F. 2d 150, 152 (C.C.P.A. 1951)).

> Whether to treat a preamble as a limitation is a determination 'resolved only on review of the entire []… patent to gain an understanding of what the inventors actually invented and intended to encompass by the claims. *Catalina Marketing Int'l, Inc., v. Coolsavings.com, Inc.*, 289 F. 3d 801, 808 (Fed. Cir. 2002).

Defendants points to DietGoal's opening brief where DietGoal stated it "does not dispute that the inventions claimed in the '516 Patent are computer-implemented." Dkt. 269 at 19. Defendants further point to the "present invention" language in the specification: "[t]he present invention can solve the above problems by providing a system and method for computerized behavior analysis, training and planning." '516 16-18. Defendants also point to DietGoal's statements made in reexamination. In particular, Defendants point to statements to distinguish the Saari reference:

> Independent claims 1 and 2 each recite a 'system of computerized meal planning' and independent claims 12 and 13 each recite a 'method of computerized planning.' The claims to 'computerized' systems and methods are entirely consistent with the description of the inventions in the Present Patent.

Response and Proposed Amendment at 20 (Dkt. 278 Ex. A). Defendants assert DietGoal then distinguished Saari on the basis that it "never uses the word 'computer' or ever suggests that the 'foldable carrying case' could be replaced by a 'computerized' system." (*Id*. at 21). Defendants note that the Federal Circuit has found reliance on the preamble in prosecution reason for finding the preamble to be a limitation. *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1348 (Fed. Cir. 2002) ("[t]his language shows a clear reliance by the patentee on the preamble to persuade the Patent Office that the claimed invention is not [rendered invalid] by the prior art. As such, the preamble is a limitation of the claims").

As to the "without utilizing a network connection" limitation, Defendants point to the reexamination prosecution. Specifically, the patentee sought to add new claims 33 and 59 that recited "the User Interface accesses the Database via a network." Response and Proposed Amendment at 4, 7 (Dkt. 278 Ex. A). The Patent Office rejected such claims as not supported by the specification:

> the specification does not provide support for these newly added claims. In particular, the Patent Owner points to FIG. 1 as supporting these newly added claims. However FIG. 1 does not show that the User Interface access the Database <u>via a network</u>.

Action Closing Prosecution at 7 (Dkt. 278 Ex. B) (emphasis in original). DietGoal canceled the claims and question and did not appeal that rejection. Defendants assert that DietGoal's cancellation is a clear disclaimer. Dkt. 278 at 4 (citing *Rheox v. Entact, Inc.,* 276 F.3d 1319, 1325 (Fed. Cir. 2002)).

As to the incorporation by reference, Defendants assert that the '516 Patent did not incorporate by reference the entire '386 Patent. Rather Defendants assert that all that was incorporated was the portion of the '386 Patent directed to behavior analysis:

> In an alternate embodiment, the Meal Database and The Food Database can incorporate a behavior analysis. As explained in detail in pending U.S. Patent applications Ser. Nos. 09/211,392, 09/461,664 [which issued as the '386 patent], and 09/734,711 (incorporated by reference), a behavior analysis comprises compiling and analyzing specific information on a user's instinctive preferences and tendencies.

'516 2:30-35. Defendants assert that this is similar to the situation in *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d 1370 (Fed. Cir. 2007) in which the Court held that "the plain language expressly limits the incorporation to only relevant disclosures of the patents, indicating that the disclosures are not being incorporated in their entirety." *Id*. at 1379. Further Defendants note the Court stated:

> patent draftsmanship is an exacting art, and no less care is required in drafting an incorporation by reference statement than in any other aspect of a patent application. The draftsman here made clear what was being incorporated by reference and, by difference, what was not.

*Zenon*, 506 F. 3d at 1382 n3.

DietGoal's Reply

DietGoal asserts that the Federal Circuit has found that a "patent specification does not need to expressly recite concepts disclosed in [] earlier [] patents in order to incorporate them into the later patent specification." *Retractable and Fifth Generation Computer Corp. v. IBM*, 416 Fed. Appx. 74, 79-80 (Fed. Cir. 2011). DietGoal also asserts that the language in *Zenon* had a critical difference in that the language stated "the relevant disclosures of each of which are included by reference." *Zenon*, 506 F.3d at 1379. Thus, DietGoal asserts that the limitation in

*Zenon* to only the relevant portion of the other disclosures was a result of the explicit patent language. Further, DietGoal asserts that even if the incorporation by reference made in the '516 Patent is limited to "behavior analysis," the entire reference relates to dietary behavior as both the '386 Patent and '392 Applications state "the invention comprises a method of computerized behavior analysis." '386 Patent 2:1-13; '392 Application at ¶[0010].

DietGoal further states that the reexamination prosecution does not impose the negative limitation sought by Defendants. DietGoal asserts that the rejection of the added claims related to an issue of the written description standard for specific embodiments in dependent claims, not claim construction of the independent claim. DietGoal asserts that the rejection did not relate to the meaning of the originally issued independent claim. DietGoal also asserts that the rejection did not consider the incorporation by reference issue. DietGoal further asserts that failure to appeal the rejection does not amount to "abandonment" of claim scope. Dkt. 287 at 4 (citing *SRAM Corp. v. AD-II Eng'g., Inc.,* 465 F.3d 1351, 1359 (Fed. Cir. 2006).

Analysis

A preamble is generally not limiting but may be properly considered a limitation of a claim "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2001). In addition as noted by Defendants, reliance on a preamble in prosecution can render the preamble limiting. *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1348 (Fed. Cir. 2002). Here both situations are applicable. First, even DietGoal acknowledges in its briefing that the "inventions claimed in the '516 Patent are computer-implemented." Dkt. 269 at 19. DietGoal made similar admissions to the Patent Office in the reexamination. Response and

Proposed Amendment at 20 (Dkt. 278 Ex. A). Outside of the preamble, however, the claims do not use the term "computerize." The claims do though use terms such as "Database" and "User Interface." The preamble use of "computerize" gives the necessary life and meaning to these other claim terms that are indicative of a computerized system. Moreover, DietGoal explicitly relied on the "computerized" limitation during the reexamination. An entire section of DietGoal's prosecution response (entitled "A) Saari Does Not Disclose or Suggest A System/Method of "Computerized [Meal] Planning") was devoted to distinguishing this preamble limitation from Saari. *Id.* at 20-22.

Defendants have failed, however, to show that the preamble should be limited to a computer "without utilizing a network connection." There seems to be no debate amongst the parties that in an ordinary meaning "computerized systems" may often include network connections. Further, it is noted that the computerized systems of the priority applications disclose network connections.[2] Thus, an ordinary meaning of a computerized system would not mandate an exclusion of network connections. Adding negative limitations to a term that are contrary to the ordinary meaning and that are not supported in the specification is frowned upon. *Omega Engineering Inc. v. Raytek Corp.*, 334 F.3d 1314, (Fed. Cir. 2003) (declining to add a negative limitation when there was no "express disclaimer or independent lexicography in the written description that would justify adding that negative limitation").

Defendants primarily rely on the Patent Office's rejection of application claims 33 and 59 during reexamination. However such reliance is misguided. The rejection in question was not

---

[2] The parties debate whether the incorporation by reference was sufficient to include the incorporation of the portions of the earlier applications which disclose a computer connected to the Internet. As discussed below, the Court does not rely on the incorporation by reference to resolve the claim construction dispute and thus need not resolve the incorporation dispute.

based upon what is the proper meaning of the term "computerized." Rather the rejection was based upon whether there was 35 USC §112 support in the specification to more narrowly claim a particular species of computerized systems. The rejection thus was not based upon what is the meaning of the more general generic term "computer." The rejection merely found that the specific embodiment of a network connected computer (a species of the broader more generic independent claim that recites "computerized") was not supported in the specification. That a particular species is not supported within a specification does not mean that the more generic claim term is not entitled to the full scope of the term as one skilled in the art would view the term in light of the intrinsic evidence as a whole as these are two different questions. *Cf. Novozymes A/S v. Dupont Nutrition Biosciences APS*, 723 F.3d 1336, 1346 (Fed. Cir. 2013) ("[w]e have often applied those fundamental concepts to hold claims invalid in cases where a patent's written description disclosed certain subject matter in terms of a broad genus but its claims specified a particular subgenus or species contained therein"); *see also Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344 (Fed. Cir. 2012) (finding that for a claim having a negative claim limitation to be valid under §112 the negative limitation must be supported within the specification); *In re Bimeda Research & Development Ltd.*, 724 F.3d 1320, 1322-24 (Fed. Cir. 2013) (rejecting a non-supported dependent claim which excludes a particular species even when the independent claim that excludes the genus is supported).

Even if the patentee's cancelation of the claims were viewed as an acquiescence to the rejection, such an acquiescence is to the §112 issue regarding support for a particular embodiment, not an acquiescence to including a negative limitation limiting the meaning of "computer" to something less than what one of ordinary skill in the art would understand in light of the specification. Here the specification discloses a computer implemented system. There is

no disclaimer or disavowal in the '516 Patent indicating that a well-known and understood particular embodiment of computers (a network connected computer such as a computer that has a connection to the Internet) is excluded from what would otherwise be the ordinary meaning for a computer as viewed in the context of the specification by one of ordinary skill in the art.

The Court finds the preamble to be limiting but rejects Defendants' attempt to define the term's meaning as excluding any network-connected system. The Court finds that "computerized meal planning" / "computerized planning" need no further construction.

## 2. "customized eating goals"[3] [Claims 1, 2, 3, 13, 30]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| This is an intended purpose and not a limitation. No construction necessary.<br><br>Note: In DietGoal's Opening Brief DietGoal asserted a construction of: "user specific dietary preference(s) or objective(s). | "two or more stored, user-specific, numeric dietary objectives" |

The primary issues presented include whether the term is a limitation of the claim and if a limitation, whether the customized eating goals may merely be mental processes within a user's mind.

DietGoal:

DietGoal asserts that its original construction is supported by the specification in passages that link effective meal planning and eating preferences and tendencies, i.e. customized eating goals, to user specific dietary preferences. Dkt. 269 at 9 (citing '516 1:46-49, 2:36-41).

---

[3] At the Oral Hearing the parties agreed that the usage of "goal" in claim 1 was intended to be "goals."

DietGoal asserts that dietary preferences are not necessarily numeric nutritional or caloric targets but could also be preferences such as ethnic food or vegetarian food. Dkt. 269 at 9. DietGoal asserts the specification uses open ended language indicating that the goals are not limited to numeric targets:

> [t]he Picture Menus provide a quick and easy system of dietary impact (including nutritional and calorie eating goals) controlled meals that that the user can mix and match at various nutritional, caloric, and other levels. In an exemplary embodiment, the invention can define the user's nutritional, caloric and other needs and let the user choose the diet he wants to follow.

'516 2:48-54. DietGoal asserts this language makes clear that numeric nutrition and calorie targets are simply examples of objectives that may be included. Dkt. 269 at 10. DietGoal asserts that Defendants are improperly attempting to read in this embodiment merely because only numeric targets are described. DietGoal asserts that qualitative descriptions such as "high fiber" and "low fat" are examples of non-numeric "nutritional values." Dkt. 287 at 7.

DietGoal also objects to Defendants' "stored" limitation. DietGoal asserts that there is no requirement in the claims for a storage limitation and that the specification does not have language suggesting such a limitation. DietGoal contrasts the '386 Patent and the '392 Application (an earlier patent and application in the priority chain) which both expressly include the language that "user selections are stored." '386 Patent Abstract, '392 Application Abstract; *see* '386 4:8-9, claim 36; '392 Application ¶[0032], claim 16.

DietGoal asserts that Defendants' contention that the term should be read into the claims based on the Meal Builder embodiments in the specification should be rejected. First, DietGoal asserts this argument is based merely on reading in embodiments from the specification. Second, DietGoal asserts that the specification language relied upon by Defendants does not suggest that goals must be stored in the claimed computer system. Dkt. 287 at 5.

DietGoal asserts that Defendants merely rely on an argument that in order to determine the impact of a food choice on the eating goals, the goals must have been saved in the system. DietGoal asserts this reasoning is wrong for multiple reasons. First, DietGoal asserts that the "impact" language only appears in certain claims, for example independent claim 2, while being absent from independent claim 1. DietGoal asserts that requiring claim 1 to "display the impact" ignores that doctrine that different claims' terms are presumed to give each claim a different claim scope. Dkt. 287 at 6.

Second, DietGoal asserts that the claims do not require the computer system to compare a user's food choices to the user's eating goals, as asserted by Defendants. DietGoal asserts that Claim 1 only requires "that a user can select from [meals] to meet customized eating goals" and that Claim 2 only requires that a user can "change content of said meals and view the resulting meals' impact on customized eating goals." '516 Claim 1 and 2. DietGoal asserts both of these concepts may be accomplished without storing the customized eating goals. DietGoal asserts, for example, that with respect to Claim 2, displaying a changed meals' calories enables the user to view the impact of the changed meal (different amount of calories) on the user's customized eating goal (e.g. the amount of calories to be consumed per meal). Thus, DietGoal asserts the computer system does not need to know the user's eating goal in order to enable the user to view the impact of the changed meal on the goal (e.g., whether the changed meal's calories exceed or meet the user's calories per meal goal).

Third, DietGoal asserts that Defendants ignore the dependent claims of the '516 Patent. In particular, DietGoal asserts that Defendants' argument is based on an assumption that the eating goal must be stored so that the system may be able to compare something to the goal. DietGoal asserts that it is an erroneous assumption that the "eating goal" by itself requires some

sort of comparison and that this assumption is contradicted by the claims. DietGoal asserts that such concepts are added in dependent claims and that thus claim differentiation supports a broader reading of claim 1. In particular, DietGoal points to Claims 9 and 11 which add "comparing the specific information to a set of [customized eating] goals." DietGoal asserts that the use of "comparing" in these claims makes clear that "customized eating goal by itself does not require a comparison.

Defendants

Defendants assert to give the term "customized eating goals" meaning, the goals must be stored in the computer, rather than merely in the user's mind. Defendants assert that the crux of the '516 Patent's invention is a system that allows a user to change the components of a meal (Meal Builder) or selection of complete meals (using Picture Menus) and then shows the user the impact of the user's choices on the customized eating goals. Dkt. 278 at 7. Defendants point to the specification passages which describe the Meal Builder as allowing the user "to view, in real time, the impact of the food choices on the customized eating goals, and the accumulated impact on daily nutrition" ('516 3:5-7) and "the Picture Menus provide a quick and easy system of dietary impact" (2:48-50). Defendants assert that in order to determine the impact of food choices on the eating goals, the eating goals must be saved in the system as the system could not compare anything to the goals if the goals were not saved. Dkt 278 at 7. Defendants assert that every disclosed embodiment requires the goals to be stored and asserts that every figure disclosing the Meal Builder and Picture Menus requires that the system act upon stored goals (noting the figures include items such as "+" signs in Figure 4 if the calories exceed the goals and a message "now exceed diet goals" in Figure 9). *Id.* at 8. Defendants assert that for a

system to automatically determine and display the impact of food choices, the goals must have been saved by the system.

Defendants further assert that in reexamination DietGoal unequivocally disclaimed a construction that merely encompasses the mental processes of a user by stating: "[i]n contrast to *Venner*, the claimed 'computerized [meal] planning' system/method does not invoke a mental process…." Response and Proposed Amendment at 22 (Dkt. 278 Ex. A) (discussing *In re Venner,* 262 F.2d 91 (CCPA 1958)). Defendants also assert that the specification distinguishes prior art that did not have the system comparing the information to stored goals:

> U.S. Pat. No. 5,545,721 to Kuch discloses a system intended to teach individuals the relationship between the visual size and a few nutritional characteristics of portions of food … while showing a few nutritional characteristics of such portions.

'516 1:52-58. Defendants assert the specification then continues with "Kuch does not allow the user to prepare and plan and adapt meals that will help the user meet his customized eating goals." '516 1:63-65. Defendants assert that the claimed system must have not only the ability to display dietary information but also the ability to compare the dietary information to the eating goals. Dkt. 278 at 9-10.

Defendants also assert that the eating goals must be limited to numerical goals because the '516 Patent only discusses such goals. Defendants cite to uses in the specification of "value," "amounts," "quantities," "numerical nutritional and dietary goals," "scoring system", "bar graph and number form," "if a user exceeds those goals," "daily total of various nutrients," and "+/- 5%." '516 1:27-34, 3:4-10, 4:21-27, 5:6-11, 5:35-37, 5:40-43, 2:56-60.

Defendants further object to DietGoal's original construction as expanding the scope of "goals" to include "preferences." Defendants note that the specification uses the term

preferences eight times, each time in a context referring to something different than eating goals. Dkt. 278 at 11 (quoting '516 2:36-41 "a diet behavior analysis which compiles and analyzes specific information on a user's instinctive eating preferences and tendencies, and then compares the specific information to a set of customized eating goals."). Defendants assert it would thus be improper to interpret "goals" to be "preferences." Defendants also note that "preferences" is used five times in the '516 claims, noting that differing claim terms are presumed to have different meanings. Dkt. 278 at 11-12.

Arguments Raised Regarding DietGoal's New Construction

In its Reply, DietGoal asserts that the entire phrase "to meet customized eating goals" merely reflects an intended result of the claimed system and therefore is not a limitation of the claim. DietGoal asserts that this is similar to cases in which the Federal Circuit has found that clauses preceded by "whereby" and "to preclude" are merely indicative of an intended result and not a limitation on a claim. Dkt. 287 at 4 (citing "whereby" and "to preclude" from *Texas Instruments v. United States ITC*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) and citing "thereby" from *Plant Equip., Inc. v. Intrado, Inc.*, 2012 U.S. Dist. LEXIS 59495, 43-44 (E.D. Tex. Apr. 27, 2012)). DietGoal also asserts that the "to meet customized eating goals" phrase describes what the system does as opposed to what the system is. DietGoal cites to *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075 (Fed. Cir. 2009) for the proposition that it is improper to construe system claims in a way that makes infringement depend on a system's function. Dkt. 287 at 4.

On sur-reply, Defendants assert that it is well settled that a "claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Defendants further note that "whereby" clauses must still be construed when they "add a meaningful limitation." *Lonestar*

*Inventions LP v. Nintendo of Am. Inc.*, 2009 WL 10011734 at *9 (E.D. Tex. Apr. 14, 2009).

Defendants further assert that DietGoal's statement in reexamination that the system "does not invoke a mental process" concedes that this step is a necessary step of the claim. Defendants further assert that a construction of "customized eating goals" is necessary to define "Picture Menu." Finally Defendants assert that DietGoal's position would construe the term inconsistently between claims that use "to meet customized eating goals" and claims that just recite "customized eating goals." Dkt 292 at 2.

<u>Analysis</u>

Of the asserted claims, only claim 1 is drafted with the language "to meet customized eating goals." The other claims at issue (2, 3, 13 and 30) use the phrase "view the [meals'] impact on customized eating goals." Thus, DietGoal's argument appears at most relevant to Claim 1. The Court is not persuaded that the term should be ignored even with regard to Claim 1. A claim construction that gives meaning to all the terms is generally preferred. *Merck*, 395 F.3d at 1372. Claim 1 does not merely utilize the claim term as an intended result of the system but rather the term is utilized in the context of describing a limitation as to the operation of the Picture Menu. Here, the claim language appears as a meaningful limitation as to the Picture Menu. Further, even if the clause was a "whereby" clause (which it is not), a whereby clause cannot be ignored when it "states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention." *Hoffer v. Microsoft*, 405 F.3d 1326, 1329 (Fed. Cir. 2005). Here the clause "to meet…" is relevant to the Claim 1 description of what can be selected in the Picture Menus: "Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goals." The term is found by the Court to be a limitation of the claims.

At the Oral Hearing, DietGoal made clear that its interpretation of "customized eating goals" encompasses mental processes that are solely within a user's mind. The Court rejects this interpretation. That the "customized eating goals" are computer implemented is supported in the claims, specification and file history. As noted above, the independent claims include "computerized meal planning" / "computerized planning." '516 Claims 1, 2, 13. There is no suggestion in the claims that the computerized planning excludes the portion of the claim where the user "can select from to meet customized eating goals" (Claim 1), "a user … can view the resulting meals' impact on customized eating goals" (Claim 2) and "where the user can change and view the meals' impact on customized eating goals" (Claim 13). Rather, in context of the claims as a whole such claim language reflects a computer implemented term. In addition, the entirety of the specification describes customized eating goals that are implemented on the computer, such as for example, '516 2:46-65, Figure 3 element 325, Figures 4-7 and 10 elements 465, 480, Figures 8-9 element 850, and the corresponding specification descriptions of the figures. There is no indication in the specification of the eating goals being merely a mental process. Further, what is described as a "customized" goal in the context of the intrinsic record as a whole is a goal that is computer implemented not merely a user's personal mental objective. Finally, the prosecution history leaves no doubt that claims are directed toward computer implemented systems and methods. As discussed above with regard to the "computerized" term, such was made clear with regard to the statements distinguishing Saari. In addition, the patentee made clear that mental processes are not being claimed:

> Third, the Office Action's cites *In re Venner*, 262 F.2d 91 (CCPA 1958) in support of its "automation" argument. In *Venner*, the pending claims were directed to an apparatus for molding trunk pistons, and the applicant admitted that the prior art taught every element of the claims except a "time-controlled means" which was "initiated by the molder by depressing a foot-operate switch." *Id*. at 92. In the prior art, the molder would have to guess at the time to complete the

molding period. *Id*. at 95. The Court stated that, "[t]he timer itself does not compute the molding period. A mental process is invoked and the timer is set accordingly" and"[p]atentability cannot be predicated upon a mental step." *Id*. In contrast to *Venner*, the claimed "computerized [meal] planning" system/method does not invoke a mental process like the "time controlled means." Thus, the Office Action's reliance on *Venner* is misplaced and cannot form a basis for rejecting the pending claims under § 103.

Response and Proposed Amendment at 22 (Dkt. 278 Ex. A). As the patentee's words in this passage make clear, "the claimed 'computerized [meal] planning system/method does not invoke a mental process.'"

The Defendants assert that "stored" is included only to make clear the goals are computer implemented and accessible by the computer, and not merely within a user's mind. The Court's construction achieves this purpose in a manner that it believes would be understandable to the jury by explicitly addressing the issue that the goals are computer implemented, while avoiding reading a new limitation into the claim as Defendants request.[4]

DietGoal is correct that in an ordinary meaning eating "goals" could be more qualitative such as "high fiber" or "low fat" rather than strictly being numeric. Though the embodiments described are generally numerical embodiments, there is no disclaimer or disavowal in the intrinsic record limiting the term to require reading in the preferred embodiment. *See Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("even where a patent describes only a single embodiment claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words of expressions of manifest exclusion or restriction" (citation omitted)). Moreover, the passage DietGoal has cited "[i]n an exemplary embodiment, the invention can define the user's nutritional, caloric and other needs and let the user choose the diet he wants to follow" ('516 2:48-54) is relevant. Here

---

[4] The Court's construction thus makes clear to the jury the meaning of the term and prevents constructions from later being asserted in the case (such as by experts) that the goals may be merely a mental process.

the goals are described as "needs" and the explicit recitation of "other needs" is indicative of goals beyond merely numeric goals.

DietGoal's original construction utilized the term "preferences or objectives." In the specification, however, goals and preferences are not treated as being the same. In fact, the two terms are treated as having different meanings: "a diet behavior analysis which compiles and analyzes specific information on a user's instinctive eating preferences and tendencies, and then compares the specific information to a set of customized eating goals." '516 2:36-41. In the context of the intrinsic record "objectives" is more proper.

The Court construes "customized eating goals" to be "computer implemented, user-specific, dietary objectives."

### 3. "food objects" [Claims 1, 2, 13]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| "data representing one or more items of food" | "food items and their corresponding nutritional and caloric data" |

The parties' primary dispute relates to whether the term requires the inclusion of "corresponding numeric and caloric data."

DietGoal

DietGoal asserts that the '392 Application which the '516 Patent claims priority to and which is explicitly incorporated by reference states that a "food object may consist of a single food item such as a glass of milk or may comprise multiple items, such as 'bacon and eggs'." '392 Application Paragraph 0030 (Dkt. 269 Ex. D). DietGoal also points to Figures 13 and 14 of the '392 Application which show "food items" as items such as sandwiches or burgers.

DietGoal asserts that Defendants' construction would thus exclude a disclosed preferred embodiment. DietGoal asserts that there is no requirement in the specification that imposes the "corresponding numeric and caloric data." DietGoal asserts that Defendants are improperly reading in a limitation from the specification. Dkt. 287 at 8.

Defendants

Defendants assert that the '516 Patent describes a system in which a user's addition of foods shows nutritional and caloric data impact: "As foods are added or removed, the user will see the Dietary Impact Bar Charts 850 change immediately. In this example, the calorie, fat, and fiber intake is shown." '516 6:38-40. Defendants assert that the patent also explains that "Meal Builder 120 incorporates a scoring system that allows the user to view, in real time, the impact of food choices on daily intake, and the accumulated impact on daily nutrition allowances…." '516 4:21-24.

Analysis

Defendants merely point to embodiments within the specification in which nutritional and caloric data is linked with the food item. However, merely because a preferred embodiment includes a limitation does not require that limitation to be incorporated within the claim. "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc.*, 156 F.3d at 1187 (citation omitted); *See also Phillips*, 415 F.3d at 1323. Further, generally terms are presumed to possess their ordinary meaning, although this can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

Defendants have not pointed to any disavowal or disclaimer within the specification that requires the limitations Defendants seek.

The term in question is utilized in the claim in the context of "Database of food objects." In the '516 Patent, Meal Database 110 and Food Database 111 are disclosed. The databases are described as allowing the addition of foods and meals that conform to a user's tastes. '516 3:5-65. The user can search for a food in the Food Database. '516 6:10-11. Further, the items that may be selected from the database in the Meal Builder are described and shown as merely food pictures that may be dragged onto a plate. '516 6:38-45, Figure 8. In these passages and elsewhere in the specification it is clear that the selection of a food may impact the dietary goals. However, where the nutritional impact of a food item is retained and how that nutritional information is linked to the food item is not explicitly stated. Defendants' linkage (in the food objects themselves) is thus not even clearly a preferred embodiment, let alone an embodiment that requires a disclaimer of a broader scope. In addition, how a term is utilized in formally related patents is also relevant intrinsic evidence to a claim construction analysis. *See Jonsson v. Stanley Works,* 903 F.2d 812, 818, (Fed.Cir.1990) (how a term is used in formally related patent is "relevant to an understanding" of the meaning of the term); *See Goldenberg v. Cytogen, Inc.*, 373 F. 3d 1158, 1167-68 (Fed. Cir. 2004) (explaining that in the absence of incorporation a related patent is still available to construe another patent when a formal familial relationship exists). Here, the '516 Patent claims priority through a chain of continuation-in-part applications to the '392 Application. '516 Patent Reexamination Certificate. The '392 Application clearly references a "food object" in the context of just the food. '392 Application Paragraph [0030] (Dkt. 269 Ex. D). The Court rejects Defendants' requirement that the food objects themselves include the corresponding nutritional and caloric data.

The parties' briefing and oral argument did not address the use of the plural "food objects" in the claims. The Court finds that "food object" means "data representing one or more items of food." As used in the asserted independent claims the database is a "Database of food objects" (plural objects).

The Court accordingly construes "food object" to mean "data representing one or more items of food" and construes "food objects" to mean "two or more food objects."

### 4. "meal" / "meals" [Claims 1-3, 6, 12-13]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain meaning (i.e., "one or more food objects") | No construction necessary |

<u>Parties' Positions</u>

DietGoal asserts that the specification explains that a meal is created by adding, substituting, removing, etc. food items from a plate. Dkt. 269 at 5-6 (citing '516 4:59-67). DietGoal also asserts that the specification states that "[t]he terms breakfast, lunch, dinner, and snacks do not require a balanced or traditional meal, but simply denote food choices the user can make. For example, though unwise, a user can choose a plate of potato chips for breakfast and see how this affects his dietary goals." '516 4:32-37. DietGoal also cites to Figures 4-7 which depict a snack as a single food item – a cupcake. DietGoal further points to the '392 Application which includes "the user can tell whether his or her meal (or food item selection) is within the defined goals…." '392 Application Paragraph [0053] (Dkt. 269 Ex. D).

Defendants object to DietGoal's example of a "meal" as being entirely inconsistent with the term's plain meaning. Defendants assert that the specification is consistent with what a

layman would interpret the term to mean – "breakfast, lunch, dinner, and snacks." Dkt. 278 at 19 (quoting '516 4:31-32).

Analysis

The parties agree that the plain meaning is applicable. The specification makes clear that a meal can consist of a single food item. '516 4:32-37, Figures 4-7. Though Defendants assert such a construction is "entirely inconsistent" with the plain meaning, meals (which all parties agree include snacks) may often in a common usage include only a single food item. Further, the specification provides explicit examples of a single food item meal (potato chips or the snack item of Figures 4-7). '516 4:32-37, Figures 4-7. Under the plain meaning and the specification, a single meal may include only one food item.

In some instances the claims recite "meal" in the singular and "meal" in the plural. In general, the claim language itself establishes when multiple meals are recited. For example, Claim 1 recites "meals." This conforms to the specification in which multiple meals are shown in the picture menu. '516 Figures 4-7. Similarly Claim 2 recites "meals" which conforms to the specification which describes that the Meal Builder may display multiple meals (though not at the same time). The language of each individual claim governs whether "meal" is singular or plural. [5]

At the oral hearing, Defendants raised for the first time the question of whether Claim 3 contains an error with regard to the two uses of "meal's." In particular, Defendants assert that the first use of "meal's" ("the user can change the content of said meal's and…") should be

_____

[5] Claim 13 is somewhat unique in that the claim explicitly describes changing "one or more meals" with the Meal Builder. Subsequently the claim references the change to the "meals" and the "meals'" impact. In the claim context it is clear that the use of "meals" and "meals'" references the one or more meals recited earlier in the claim and thus the claim encompasses either the singular or the plural.

plural and not possessive ("meals").  Defendants assert that the second use of "meal's" ("view the resulting meal's impact on customized eating goals") should be plural and possessive ("meals'").    This issue regarding Claim 3 was not presented in the parties' final claim construction chart and was not briefed and thus is not properly before this Court.[6]

The Court construes "meal"/"meals" to be "Plain and ordinary meaning."

### 5. "Picture Menus" [Claims 1, 3, 6, 13]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "at least one digital image of a meal" | "pictures of meals which can be mixed and matched by a user to meet customized eating goals" |

The parties' dispute centers on the Defendants' inclusion of "mixed and matched by a user."

<u>DietGoal</u>

DietGoal asserts that the specification discloses images of meals displayed on the User Interface.  Dkt. 269 at 7 (citing '516 2:46-48, Figures 4-10).  DietGoal further notes that in the reexamination the Patent Office stated that "the examiner agrees with [Patent Owner's] definition of the term 'Picture Menus' as pictures [sic] menus for displaying (i.e. making visible) pictures of meals on the User Interface."  Action Closing Prosecution at 10 (Dkt. 269 Ex. E).  DietGoal also asserts that claim 1 already concludes with the language "to meet customized eating goals" and thus the language is redundant.  Dkt. 269 at 8.  DietGoal also points to the language of independent claim 12 which includes "one or more Picture Menus…that the user can mix and match to meet customized eating goals."  DietGoal asserts that the "mixed and matched"

---

[6] If the Claim 3 issue subsequently becomes relevant to the case, the Court may revisit the issue on motion of the parties.

language in Defendants' "Picture Menu" construction would render the "mix and match" language explicitly recited in claim 12 to be superfluous. Dkt. 287 at 9. DietGoal asserts that Defendants' construction is an improper attempt to impose limitations from the preferred embodiments and that Defendants' construction relates to how a Picture Menu is used. DietGoal asserts that though the specification states Picture Menus can be used to mix and match, the specification does not state that Picture Menus are limited to such a use. Dkt. 269 at 7-8 (citing '516 2:46-48).

Defendants

Defendants assert that the use in the specification is particularly important as "Picture Menu" is a coined term that has no meaning except as provided by the specification. Dkt. 278 at 15-16 (citing *Collins v. Nissan N. Am., Inc.*, 2013 WL 448923 at *7 (E.D. Tex Feb. 6, 2013) (Gilstrap, J.). Defendants cite to the specification statements:

> [t]he Picture Menus 115 are a quick and easy system of dietary impact controlled instant meals that the user can mix and match at various nutritional, caloric, and other levels. '516 3:66-4:11.

> The Picture Menus can display on the User Interface meals from the Database that the user can mix and match and still meet customized eating goals. '516 2:46-48.

Defendants also assert that the figures are described as illustrating mixing and matching meals:

> Fig. 5 is an exemplary screen shot 500 illustrating a use of the Picture Menus 115. The user has already indicated a Breakfast Choice 411 and Lunch Choice 416. The user chooses a Dinner Choice 421 comprising barbequed chicken, baked potatoes, and beans. The user views the Dietary Impact 465 … of the Dinner Choice 421 on his daily allowance, and sees that with his dinner choice, he has used 1650 (more than his allocated 1600) calories.

'516 5:48-56. Defendants assert that every embodiment of a Picture Menu permits the mixing and matching of images. Defendants assert that the menus in the '516 Patent are lists of food

options from which a user may mix and match.  Defendants also assert that including a single digital image of a meal conflicts with the plain meaning of the plural term Picture Menus.  Dkt. 278 at 17.  At the Oral Hearing, Defendants cited to extrinsic evidence that a menu is "a list of choices that appears on the screen in response to your actions" (*Dictionary of Computer and Internet Terms*, Sixth Ed. (1998) at 289) and "a list of options displayed to the user by a data processing system, from which a user can select an action to be initiated" (*IBM Dictionary of Computing* (1994) at 427).  Defendants also asserted at the Oral Hearing that the "mix and match" limitation is needed to describe the daily meal planner concept that is shown in the '516 Patent.

Analysis

The claim term in question is "Picture Menu."  Defendants seek to include in their construction a particular way that the Picture Menu is used rather than focusing on what a Picture Menu is.  Defendants primarily assert that the only disclosed use of a Picture Menu is for mixing and matching.  However, even the disclosure of a single embodiment does not mandate reading that embodiment into the claims.  *See Arlington Industries*, 632 F.3d at 1254 (Fed. Cir. 2011). Moreover, Defendants ignore the claims themselves which are the starting point for the claim analysis.  Independent Claim 1 describes the use of the Picture Menu as merely a menu "that a user can select from."  Independent Claim 12 describes the Picture Menu as a menu "that the user can mix and match."  Thus the claims themselves counsel against Defendants' limitation.  In addition, the two passages in the specification that utilize "mix and match" do so in a more permissive manner: "the user <u>can</u> mix and match."  '516 2:46-51, 3:66-4:1. However, the specification indicates a more general usage of "Picture Menus."  The Abstract merely references that the user can use the Picture Menus "to choose meals for a particular time period," not

limiting the term to a mix and match approach. '516 Abstract. The figures are also described merely as "exemplary screen shots" of Picture Menus. '516 3:30-31.

DietGoal's proposed construction is missing the "menu" concept of "Picture Menu." As Defendants noted in the Oral Hearing with regard to the extrinsic evidence, in an ordinary meaning a "menu" in a computer environment connotes something that a user can select from. Such a connotation also exists when "menu" is utilized in dietary contexts. DietGoal's construction does not give meaning to "menu." It is noted that during prosecution, the construction for a Picture Menu adopted by the PTO included "menu." Action Closing Prosecution at 10 (Dkt. 269 Ex. E). A proper construction of Picture Menu should give meaning to "menu" by including the selection concept that Defendants note is in the common meaning of the term, a concept which also is shown in the specification.

The Court construes "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from."

### 6. "Meal Builder" [Claims 2, 3, 6, 13, 41]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "a computer program for designing and modifying meals" | "a computerized function that allows the user to change a meal and visually indicates the meal's impact on customized eating goals" |

The parties' dispute is focused on whether the Meal Builder must "visually indicate the meal's impact on customized eating goals."

DietGoal

DietGoal cites to the specification as supporting its construction:

The Meal Builder can display on the User Interface meals from the database, corresponding to the Picture Menus, where the user can change and view the meals' impact on the customized eating goals. The Meal Builder can be a very useful tool, not only for modifying and personalizing Picture Menus, but also for designing meals and picturing favorite recipes. The Meal Builder can be a scoring system that allows the user to view, in real time, the impact of food choices on customized eating goals, and the accumulated impact on daily nutrition allowance made by saved meals and snacks throughout the day.

'516 2:65-3:8. DietGoal further asserts that the specification makes clear that the Meal Builder is distinct from the Picture Menus and that the Meal Builder can be used to change meals separate and apart from the Picture Menus: "Meal Builder 120 can be used as a stand-alone feature, or can be used with the Picture Menus 115." '516 4:19-21. DietGoal asserts that although the specification describes "the user can change and view the meals' impact on the customized eating goals" (2:67-3:1), this use is merely an example of many possible uses and is not a required use. Dkt. 269 at 13. DietGoal notes the specification states that the "Meal Builder can be very useful too, not only for modifying and personalizing Picture Menus, but also for …picturing favorite recipes." '516 3:1-4. DietGoal asserts that Defendants' construction excludes the favorite recipes embodiment. DietGoal also asserts that Defendants' construction redundantly incorporates limitations claimed elsewhere. In particular DietGoal asserts that Defendants' "visually indicates the meal's impact on customized eating goals" is nearly identical to the claims' use of "view the resulting meals' impact on customized eating goals" that appears later in the claim. '516 claim 2.

Defendants

Defendants assert that the specification repeatedly states that the Meal Builder allows the impact of a meal change to be viewed:

The Meal Builder can display on the User Interface meals from the database, corresponding to the Picture Menus, where the user can change and view the meals' impact on the customized eating goals. '516 2:65-3:1

The Meal Builder can be a scoring system that allows the user to view, in real time, the impact of food choices on customized eating goals…. '516 3:4-6.

Defendants also assert that the figures are described in a similar context: "FIG. 10 is an exemplary screen shot 1000 of a use of the Meal Builder 120… The user can also see the Dietary Impact 465 of the meal change, with the inclusion of the Carrot Choice 905." '516 6:53-60.

Defendants also assert that the claim language supports their construction, as the Meal Builder is provided so "a user can change content of said meals and view the resulting meals' impact on customized eating goals." '516 claim 2. Defendants also point to the reexamination prosecution history where the Saari reference was distinguished by the patentee because Saari lacked a Meal Builder. Response to Office Action at 27 (Dkt. 278 Ex. A). Defendants assert that in arguing the lack of a Meal Builder the patentee emphasized that Saari "does not disclose or suggest any way to 'view the resulting meals' impact' on customized eating goals" and "even assuming that Saari allowed the user to change the content of meals, Saari teaches away from allowing a user to 'view the resulting meals' impact' on customized eating goals." *Id.* at 28. Defendants assert that DietGoal thus disclaimed any construction of Meal Builder that does not include the requirement that the Meal Builder "visually indicates the meal's impact on customized eating goals." Dkt. 278 at 22. As to DietGoal's redundancy argument, Defendants assert that the Federal Circuit has found that at times any redundancy can "mutually reinforce definitions rather than being superfluous." Dkt. 278 at 23 (quoting *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 707 (Fed. Cir. 1997)).

Analysis

DietGoal's primary argument is that Defendants' construction would exclude an embodiment in the specification regarding recipes: "Meal Builder can be very useful too, not only for modifying and personalizing Picture Menus, but also for …picturing favorite recipes." '516 3:1-4. However, DietGoal reads too much into this passage. This passage does not stand for the proposition that there is a disclosed Meal Builder embodiment that does not include meal building but rather only includes picture recipes. Rather, the sentence read more naturally (and in light of the full intrinsic record) is indicative that in addition to using the Meal Builder for building meals the Meal Builder may also provide picture recipes.

The specification introduces the term Meal Builder with a statement that places the Meal Builder in the context of a program that indicates the meal's impact:

> The Meal Builder can display on the User Interface meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals.

'516 2:65-3:1; *See* '516 3:4-6, 4:21-25. In contrast to the Picture Menu argument above, this is a statement as to what a Meal Builder is rather than merely an example of how a Meal Builder is used. The specification also conforms to the clear statements made by the Patentee in reexamination with regard to Saari. One of the central focuses of the patentee's statements with regard to Saari and the "Meal Builder" term related to the concepts that Saari "does not disclose or suggest any way to 'view the resulting meals' impact' on customized eating goals" and "even assuming that Saari allowed the user to change the content of meals, Saari teaches away from allowing a user to 'view the resulting meals' impact' on customized eating goals." Response to Office Action at 28 (Dkt. 278 Ex. A).

Defendants' construction also conforms to the claim language itself which includes, for example in Claim 2, the Meal Builder being claimed as "wherein a user can change content of said meals" and the user can "view the resulting meals' impact." Similar language can be found in Claims 3 and 13. As to DietGoal's argument that Defendants' construction is merely redundant to what is in the claims already elsewhere, inclusion of Defendants' construction language "should help, rather than hinder" a clearer understanding of the claim as a whole. *See Bell & Howell Document Mgnt. Prods. Co. v. Altek Sys.*, 132 F.3d at 707. At the Oral Hearing DietGoal noted that claim 6 recites the Meal Builder without the viewing requirement. However, the usage in Claim 6 does not contradict the meaning found in the specification, file history and other claims. At the Oral Hearing DietGoal also noted that Defendants' construction fails to include the concept that a Meal Builder may create a new meal. DietGoal's assertions regarding "create" are correct and in conformance with the specification.[7] '516 Patent 3:17-18 ("the user can edit or create new meals using Meal Builder"), 4:55-64, 6:5-14, Abstract.

The Court construes "Meal Builder" to be mean "a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals."

### 7. "User Interface" [Claims 1, 2, 12, 13]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "software through which a user sends commands and views displayed results" | "an interface including hardware and software through which a user sends commands and views displayed results from the Database and which does not access the Database via a network" |

There are three disputes between the parties, (1) whether hardware is required, (2) whether the results must come from the Database and (3) whether network access is prohibited.

[7] At the Oral Hearing, Counsel arguing for Defendant General Mills agreed that the use of "create" was proper.

<u>DietGoal</u>

DietGoal asserts that the User Interface is described in the specification: "[t]he UI [User Interface] can receive commands from the user and display results to the user from the Picture Menus and Meal builder." '516 2:22-23. DietGoal also points to nearly identical language with reference to Figure 1 and UI 105. '516 3:48-50. DietGoal asserts that its construction is also consistent with extrinsic evidence technical dictionaries. Dkt. 269 at 14-15. DietGoal also cites to the Reexamination in which the PTO stated that "[t]he examiner agrees with the PO's [Patent Owner's] definition of the phrase 'User Interface' as 'a computer-implemented graphical user interface.'" Nonfinal Action Closing Prosecution at 9 (Dkt. 269 Ex. E). DietGoal notes that the PTO did not include hardware in this construction. DietGoal further notes that there is no language in the claims requiring a user's hardware (such as monitor or keyboard) be part of the "User Interface" and that not a single figure of the '516 Patent depicts hardware. Dkt. 287 at 8.

DietGoal asserts that Defendants' limitation of "which does not access the Database via a network" is improper for the same reasons that limitation is improper in the "computerized" limitations discussed above. DietGoal also points to claim 25 of the '386 Patent which states "wherein said database is located at a website and said display is transmitted over the internet to a user." '386 Claim 25.

DietGoal also asserts that the User Interface is not limited to displaying results from "the Database." More particularly, DietGoal asserts that the specification states that the UI "can receive commands from the user and display results to the user from the Picture Menus and Meal Builder. '516 2:22-23. DietGoal asserts that Defendants' construction excludes this embodiment.

<u>Defendants</u>

Defendants assert that common sense dictates that hardware is required to permit a user to send commands and view displayed results. Defendants also assert that DietGoal's construction is inconsistent with the patent specification as the specification discloses that the user can make changes to meals and view the meals' impact on eating goals on the User Interface. '516 2:65-3:1.

As to "displayed results from the Database," Defendants assert the claims themselves make this requirement:

> …at least one Picture Menus, which displays on the User Interface meals from the Database… (Claim 1).
>
> …a Meal Builder, which displays on the User Interface meals from the Database… (Claim 2).
>
> …a Meal Builder, which displays on the User Interface meals from the Database, corresponding to the Picture Menus… (Claim 3).
>
> …Picture Menus, which display on a User Interface meals comprised from the food objects from the Database… (Claim 12).
>
> … which displays on the User Interface the food objects from the meals from the Database… (Claim 13).

Defendants also assert that the specification similarly states "the Picture Menus can display on the User Interface meals from the Database" ('516 2:46-48) and "the Meal Builder can display on the User Interface meals from the Database" ('516 2:65-66).

Defendants object to DietGoal's dictionary definitions as not conforming to the priority dates (one dictionary being from 2013) and including "graphical user interface" rather than the term "user interface." As to the network limitations, Defendants rely on similar arguments made with regard to the "computerized" term.

Analysis

The context of the '516 Patent makes clear that the User Interface is a software element. Though software and the results that software display are ultimately used in a hardware environment, the intrinsic record as a whole demonstrates that the User Interface does not have to encompass the accompanying hardware (in this case a monitor). Defendants' assertions rely primarily upon the limitations which relate to the User Interface "displaying" the Picture Menu or the Meal Builder. However, in general common usage software may be considered to "display" items (such as a word processing program displaying a document). More importantly, the '516 Patent describes the User Interface in the context of just software. '516 Patent is described as computer based method "for training individuals to modify behavior, and planning by individuals for modified behavior." '516 Patent 1:8-11. Further, the '516 Patent explains:

> The present invention can solve the above problems by providing a system and method for computerized behavior analysis, training, and planning. The system of programs can include a User Interface (UI), a Meal Database, a Food Database, Picture Menus, and a Meal Builder.

'516 2:14-20. The User Interface is explicitly described as a "program" in this passage. Figure 1 shows the User Interface in conjunction with databases, menus and the builder, all software elements also described in the passage above. Figure 1 is also described as "the underlying architecture of an exemplary embodiment of the present invention." 3:23-25. It is clear that the User Interface is a program that is part of the program architecture disclosed. Though it would be recognized that some hardware would ultimately run the various programs, the '516 Patent does not utilize the User Interface term in the context that the User Interface itself is hardware.

The claims themselves are instructive with regard to Defendants' "results from the Database" limitation. The claims make clear that what displays meals on the User Interface is

the "Picture Menus" (claims 1 and 12) and "Meal Builder" (claims 2, 3, and 13). Though the meals are described as "from the Database," Defendants' language does not match the explicit claim language. As claimed the Picture Menus or Meal Builder display on the User Interface meals from the Database. Defendants' construction adds an additional requirement that results must also come from the Database. The specification in contrast discloses embodiments in which "results" such as dietary warnings or dietary impact bars are provided from the Picture Builder or Meal Builder. *See* '516 5:30-47, 6:5-29, 6:38-45.

As to Defendants' limitation "which does not access the Database via a network," the arguments presented are substantially similar to the network portion of the "computerized" term arguments discussed above and are rejected for the same reasons as stated with regard to the "computerized" term.

The Court construes "User Interface" to mean "software through which a user sends commands and views displayed results."

8. **"view the resulting meals' impact on customized eating goals" [Claims 2]/ "view the resulting meal's impact on customized eating goals" [Claim 3]/ "view the meals' impact on customized eating goals" [Claims 13, 14]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "view a visual representation of the effect on the customized eating goal of a change to one or more meals" | "view a visual representation of the relationship between the cumulative dietary impact for the meals and the stored customized eating goals" |

The primary disputes between the parties relate to Defendants' inclusion of "stored" and "cumulative."

DietGoal

DietGoal asserts that multiple examples in the specification show that changes the user makes to a meal result in a change to the displayed nutrition information.

Meal Builder 120 incorporates a scoring system that allows the user to view, in real time, the impact of food choices on daily intake, and the accumulated impact on daily nutrition allowance made by saved meals and snacks throughout the day. '516 4:22-25.

As foods are added or removed, the user will see the Dietary Impact Bar Charts 850 change immediately. In this example, the calorie, fat, and fiber intake is shown. '516 6:38-41.

DietGoal also cites to Figure 5 and its description at 5:48-64 as showing how changes to a meal alter the calories. DietGoal asserts that the '386 Patent to which the '516 Patent claims priority also describes comparing user-created meals with customized eating goals:

After the goals are established, the training program displays an empty plate on the screen. Foods are then selected from scrolling photographs on the side of the screen and, using click and drag or other means, are placed on the plate before portion sizes are adjusted by either increasing or decreasing the actual size of the image or by increasing or decreasing the number of images of the same size. The meals that have been "created by eye" are then evaluated against the new diet goals.

'386 3:30-38.

DietGoal objects to Defendants' construction as requiring the customized goals to be "stored." DietGoal notes that the '386 Patent claims including "stored" but that none of the '516 Patent claims include such a limitation. DietGoal also objects to the inclusion of "cumulative." DietGoal asserts there is no requirement of a "cumulative" impact and that "cumulative" is a term that does not appear in the '516 specification.

<u>Defendants</u>

Defendants assert that every embodiment contemplates that "[a]s foods are added or removed, the user will see the Dietary Impact Bar Charts 850 change immediately. … This indicates the contribution each food makes to the user's nutrition and calorie intake." '516 6:38-40. Defendants further assert that the express language of the claims contemplates displaying the impact of changes to "meals" plural. Defendants assert that by consistently referring to meals' impact (plural), the claim language necessitates displaying a cumulative impact, rather than the impact of a single meal. Defendants assert that this is consistent with the specification which states that "Meal Builder 120 incorporates a scoring system that allows the user to view, in real time, the impact of food choices on daily intake, and the accumulated impact on daily nutrition allowance made by saved meals and snacks throughout the day." '516 4:21-25.

Defendants assert that the claims relate to computerized meal planning. Defendants assert that there can be no meaningful dispute that such a system requires storage of the goals to permit the calculation and display of changes to meals on the user's goals. Dkt. 278 at 27. Defendants cite to portions of the specification which describe "saved meals" ('516 4:24) and "display on the User Interface meals from the database" ('516 2:65-66).

At the Oral Hearing Defendants also asserted that the claim terms relate to the relationship between the impact of the meals and the goals as opposed to the impact on the goals themselves. Defendants also asserted at the Oral Hearing that claim 3 has a typo in that the usage of "said meal's" should be "said meals'" as earlier in the claim "meals" is referenced.

<u>Analysis</u>

Given the Court's constructions found elsewhere herein for "customized eating goals" and "meal" / "meals," no further construction is needed for the phrase "view the resulting meals' impact on customized eating goals."  Defendants' "stored" limitation is directly discussed above with regard to the "customized eating goals" which was found above to be limited to computer implemented goals.  As to cumulative limitation, Defendants generally rely upon reading in the embodiments shown with regard to the Figures.  However, Defendants have not pointed to intrinsic evidence mandating the inclusion of "cumulative."  Further, the specification describes the impact in more general terms without use of "cumulative."  For example step 325 of Figure 3 is described as "the Dietary Impact Bar Charts are changed to correspond to the changed meal." '516 5:3-4.  Also, the specification states "[t]he Compute 845 allows the user to see the impact of the foods on the plate on the dietary goals." '516 6:16-18.    Furthermore, the claims do not mandate such an interpretation.  Even where the claims call out viewing the impact of "meals" (plural), such limitation does not mandate the display of a cumulative impact.  Rather the language of such claims only requires displaying the impact of multiple meals, whether that is done as a cumulative display or some other fashion (such as showing the impact of multiple meals singularly) is not mandated by the claim.

The Court finds that the terms have their plain and ordinary meaning.  No further construction is needed beyond the construction of the sub-terms provided herein.

9.  **"value" [Claims 24, 49]**

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| Plain meaning | "an assigned or calculated numerical quantity" |

<u>Parties Positions</u>

DietGoal asserts that the term would be understood by one skilled in the art and objects that Defendants' construction is flawed because the "value" need not be numerical, such as in qualitative descriptions of "high fiber" and "low fat."  Dkt. 269 at 20.

Defendants assert that "high fiber" and "low fat" are clearly inconsistent with the plain meaning of the term.  Defendants assert that the term is used in the claims in context of "nutritional value" and "selected caloric value."  Defendants assert that in either case the value must be numerical because the '516 Patent only teaches numerical values.  Dkt. 278 at 28. Defendants point out that the Background of the Invention states that the prior art lacked tools for identifying the significance of "the value and amount of specific macro and micro nutrients in different foods."  '516 1:29-30.   Defendants point to the discussion of the Meal Builder providing a "scoring system" to evaluate the impact on daily nutrition allowances and the "distribution of calories and nutrients."  '516 3:4-10.   Defendants assert that statements such as "low fat" or "gluten free" would not conform to the disclosure.  Defendants also cite to the example in Figure 6 which depicts the numerical dietary impact of the user's addition of grapes to a daily calorie allowance.  Defendants also note that the patent describes the invention as trigging a warning when a user exceeds a dietary goal by 5%:

> the invention can define the user's nutritional, caloric and other needs and let the user choose the diet he wants to follow.  In response to data input regarding personal characteristics and activity level, calorie goals are defined, and daily meals are combined ( and modified) to produce a daily total of various nutrients which can vary only +/-5% from the diet goals before a warning appears.

'516 2:52-59

Defendants assert there is not a single disclosure in the specification of a non-numerical value. Defendants assert that the claims cannot be broader than the scope of the invention in the specification and that "the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claims." Dkt. 278 at 30 (quoting *Phillips*, 415 F.3d at 1316). Defendants assert their construction is thus consistent with both the ordinary meaning and intrinsic evidence.

Analysis

DietGoal is correct that in an ordinary meaning "values" can be "high" or "low" when viewed in the context of the claimed "nutritional value" and "selected caloric value." For example in the context of dietary meanings one could have "high calorie" or "low calorie" or "high fat" or "low fat." Though the embodiments described are all numerical embodiments, there is no disclaimer or disavowal in the intrinsic record limiting the term to require reading in the preferred embodiment. *See Arlington Industries*, 632 F.3d at 1254 (Fed. Cir. 2011). It is further noted that the terms "nutritional value" and "selected caloric value" are recited in claims 24 and 49 as part of a list of items in which the other items would clearly not be limited to just numeric levels, thus indicative that the values do not have to be limited to numbers ("correspond to at least one of a selected nutritional value, a selected caloric value, a selected personal characteristic, and a selected activity level"). The Court rejects Defendants' numerical quantity limitation.

The Court construes "value" to have its "plain and ordinary meaning."

### 10. Means Plus Function Terms

**"Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal[s]" [Claim 1]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Not governed by § 112, ¶6 | Function: "displays on the User Interface meals from the Database that a user can select from to meet customized eating goals"<br><br>Structure: software that generates the screen shots identified as Picture Menu 115 shown in Figs. 4-7, and 10. |

**"Meal Builder, which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals" impact on customized eating goals" [Claim 2]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Not governed by § 112, ¶6 | Function: "display[ing] on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals"<br><br>Structure: software that generates the screen shots identified as Meal Builder 120 shown in Figs. 8 and 9 and described at col. 6, ll. 5-51. |

**"Meal Builder, which displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals" [Claims 13, 14]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Not governed by § 112, ¶6 | Function: "displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals" |

| | Structure: software that generates the screen shots identified as Meal Builder 120 in Figs. 8 and 9 and described at col. 6, ll. 5-51, where Meal Builder 120 is integrated with Picture Menus 115 as depicted in step 220 of Fig. 2 and described at col. 4, ll, 37-41. |
|---|---|

The parties dispute whether the terms in question are means plus function terms under 35 USC §112 ¶6.

DietGoal

DietGoal asserts that none of the '516 claims use the term "means" and that in such cases a rebuttable presumption that 35 USC §112 ¶6 does not apply exists. DietGoal asserts that the Federal Circuit has found the presumption to be a strong presumption:

> As we stated in *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F. 3d 1354 at 1362 (Fed. Cir. 2004), "[w]e have seldom held that a limitation not using the term 'means' must be considered to be in means-plus-function form," and "the circumstances must be [unusual] to overcome the presumption…" So too the dissent erroneously suggests that claims cannot avoid means-plus-function treatment unless the claim term denotes a specific structure. But "[i]n considering whether a claim term recites sufficient structure to avoid application of section 112 ¶6, we have not required the claim term to denote a specific structure. Instead we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function'. *Id.* at 1359-60.

*Mass. Inst. of Tech. v. Abacus Software, Inc.*, 462 F.3d 1344, 1356 (Fed. Cir. 2006)

DietGoal notes that the Federal Circuit has found that to rebut the presumption it must be demonstrated that "the claim term fails to 'recite sufficiently definite structure' or else recites a 'function without reciting sufficient structure for performing that function." *Apex Inc. v. Raritan*

*Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) (internal citations omitted). DietGoal further notes that:

> "To help determine whether a claim term recites sufficient structure, we examine whether it has an understood meaning in the art." As an aid in making this determination, this court inquires into whether the "term, as the name for the structure, has a reasonably well understood meaning in the art," keeping in mind that a claim term "need not call to mind a single well-defined structure" to fall within the ambit of § 112, ¶6.

*Id.* (internal quotations omitted).

As to the "Picture Menus" phrase, DietGoal asserts that the phrase contains the structural limitations of "Picture Menus," "User Interface," and "database." DietGoal asserts that each of these terms connotes well known computer structures. DietGoal also cites to two computer dictionaries to demonstrate that "menu" is a known computer structure. Dkt. 269 at 23-24.

As to the "Meal Builder" phrase in claim 2, DietGoal asserts that the same structural limitations of "Picture Menus," "User Interface," and "database" are contained in the Meal Builder phrase. DietGoal also notes that "Meal Builder" is self-evidently structure in view of the claim language that states the Meal Builder allows a user to change the content of meals on the User Interface. Dkt. 269 at 24. As to claim 13, DietGoal notes that the claim is a method claim and hence the inventor was clearly not claiming a structure pursuant to 35 USC §112 ¶6.

DietGoal asserts that none of the terms are drafted in the context of "generic structure terms" such as "means," "element," or "device" and are not "coined terms" lacking a clear meaning such as "widget" or "ram-a-fram." DietGoal asserts that "picture" and "meal" are plain English words that are understood by a lay person and that "menu" is readily understood in the computer field. DietGoal asserts that Builder in the context of the computer implemented '516

Patent would be understood by one skilled in the art to refer to a software program for designing and modifying representations of meals. Dkt. 287 at 10.

Defendants

Defendants assert that the presumption is overcome with regard to "Picture Menu" because the term is a "coined term" lacking a clear meaning in the context of the specification. Defendants assert that the Federal Circuit has found that a coined term lacking a clear meaning, such as "widget" or "ram-a-fram" should be construed under 35 USC §112 ¶6. Dkt 278 at 18 (quoting terms from *Personalized Media Comm., LLC v. ITC,* 161 F.3d 696, 704 (Fed. Cir. 1998). Defendants also cite to the district court case, *Yodlee, Inc. v. CashEdge, Inc.,* 2006 WL 1883342 at *3 (N.D. Cal. July 7, 2006) as construing a coined term "gatherer" to be a means plus function term in the context of a software patent. Defendants assert that "Picture Menu" is a similar coined software related term. Dkt. 278 at 18.

Defendants also assert that the presumption is overcome because the claim term fails to recite sufficiently definite structure. Defendants assert the claim phrase has two functions: (1) "displaying on the User Interface meals from the Database" and (2) allowing "a user [to] select from to meet customized eating goal[s]." Dkt. 278 at 18. Defendants assert that their constructions conform to the corresponding structure for these functions and provide specification citations for the structure. Dkt. 278 at 18-19. Defendants assert that the recited "User Interface" and "database" do not perform the claimed function but instead are objects manipulated by the "Picture Menus." Defendants further assert that "pictures" are simply information to be displayed and cannot "display on the User Interface meals from the Database" as required by the claim. Dkt. 278 at 19, n. 11.

As to the "Meal Builder" phrases, Defendants similarly assert the phase is a coined term lacking clear structural meaning and rely on similar arguments as presented with the "Picture Menu" phrase. With regard to the claim 2 "Meal Builder" phrase, Defendants assert that the functions are (1) "displays on the User Interface meals" and (2) "wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals." Dkt. 278 at 24. Defendants point to the disclosures of column 6 and Figure 8 for the corresponding structure. *Id.* at 24-25. With regard to the "Meal Builder" phrase of claim 13, Defendants assert the only difference is that the claim language has an additional limitation requiring either the Meal Builder or the displayed meals to "correspond to the Picture Menus." Defendants assert this claim requires additional software structure that integrates the Meal Builder with the Picture Menu. *Id.* at 25-26.

Analysis

The claim terms in question do not utilize "means" language or even generic structural language such as "element" or "widget." As such the terms are presumed not to be means plus function terms under 35 USC §112 ¶6. *Mass. Inst. of Tech.*, 462 F.3d at 1356. Though the terms "Picture Menu" and "Meal Builder" may be coined within the specification, Defendants have failed to meet their burden of showing that the claims do not recite sufficiently definite structure. *See Apex Inc.*, 325 F.3d at 1372 (Fed. Cir. 2003). In fact, the Court observes that the claims, read together with the context provided by the '516 Patent specification, recite sufficiently definite structure to provide meaning to one skilled in the art. Therefore, the presumption in this case is correct. *Id.* Defendants argued that these terms lack any clear meaning in light of the specification, but proceeded to propose a construction of both these terms. At Defendants' urging, the Court has construed the terms in question as set forth above. This is indicative that

those terms have meaning in context of their use in the specification. Further, portions of the terms themselves ("Picture," "Meal," "menu" and "builder") provide some guidance as to their meaning in an ordinary meaning even without resort to the specification. With the additional specification guidance these terms are not insufficient structure that would fail the presumption. As the primary components of the phrases in dispute ("Picture Menu," "Meal Builder," "Database of food objects," "User Interface," "customized eating goals," "food objects," "meals" etc.) are either construed herein or subject to agreed constructions, no further construction of the longer phrases is required. For these reasons, the Court finds that the phrases are not governed by 35 USC §112 ¶6 and that no further construction is needed beyond the individual terms that are construed herein.

**SIGNED this 13th day of February, 2014.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE